## STATE OF CONNECTICUT *v.* DEOWRAJ BUDDHU (SC 16605)

Borden, Norcott, Palmer, Vertefeuille and Zarella, Js.

---

Argued January 15—officially released June 24, 2003

*Robert J. Scheinblum*, assistant state's attorney, with whom were *John M. Massameno*, senior assistant state's attorney, and, on the brief, *Christopher L. Morano*, chief state's attorney, for the appellant (state).

*Wesley S. Spears*, for the appellee (defendant).

*Opinion*

ZARELLA, J. In this certified criminal appeal, we are called upon to determine, inter alia, whether the Appellate Court properly upheld the trial court's ruling on a motion of the defendant, Deowraj Buddhu, to suppress certain evidence that police officers had seized while executing a search warrant at the defendant's residence. The trial court granted the defendant's motion to suppress on the basis that the facts alleged in the affidavit accompanying the warrant application did not establish probable cause to search the defendant's residence and that the warrant itself failed to describe with particularity the place to be searched as required by the

fourth amendment to the United States constitution.[1] Thereafter, the trial court dismissed the substitute information charging the defendant with multiple violations of the Penal Code.[2] The state appealed, on the granting of permission to appeal,[3] from the judgment of the trial court to the Appellate Court. The Appellate Court affirmed the judgment of the trial court, concluding that the warrant failed to satisfy the particularity requirement of the fourth amendment. *State* v. *Buddhu*, 65 Conn. App. 104, 111, 112, 782 A.2d 169 (2001). On appeal to this court, the state claims that the Appellate Court improperly determined that the warrant did not satisfy the particularity requirement and that the trial court improperly determined that the warrant was not supported by probable cause. We agree with the state and, accordingly, reverse the judgment of the Appellate Court.

The following facts and procedural history are relevant to this appeal. On November 17, 1995, Gary E.

---

[1] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The fourth amendment is made applicable to the states through the due process clause of the fourteenth amendment. *Mapp* v. *Ohio*, 367 U.S. 643, 655, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961).

[2] The defendant was charged with 111 counts of the crime of attempt to commit forgery in the second degree in violation of General Statutes §§ 53a-139 and 53a-49 (a), twenty-five counts of the crime of forgery in the second degree in violation of § 53a-139, two counts of the crime of attempt to commit larceny in the first degree as an accessory in violation of General Statutes (Rev. to 1995) § 53a-122 and General Statutes §§ 53a-8 and 53a-49 (a), and one count each of the crimes of larceny in the first degree as an accessory in violation of General Statutes (Rev. to 1995) § 53a-122 and § 53a-8, money laundering in the second degree as an accessory in violation of General Statutes §§ 53a-277 (a) and 53a-8, racketeering activity in violation of General Statutes § 53-395 (c), and conspiracy to commit racketeering activity in violation of § 53-395 (c) and General Statutes § 53a-48.

[3] See General Statutes § 54-96.

Gaudioso, an employee of The Bank of New York, reported to the Rocky Hill police department that unknown persons had forged and negotiated two checks resulting in a monetary loss of approximately $58,400. Gaudioso provided copies of the checks, which revealed that one check, in the amount of $8400.65, was made payable to and negotiated by Gregory W. Roberson on August 3, 1995, and that the other check, in the amount of $50,000, was made payable to and negotiated by Michael Anthony Casati on August 16, 1995. According to Gaudioso, the forgeries were not immediately identified because they were of "professional-quality."

On November 20, 1995, the Rocky Hill police department executed search warrants upon Casati's person, residence and vehicle for evidence relating to the forgeries. Subsequent to the execution of the warrants, Casati was interviewed by police. In addition, Casati completed an affidavit in which he acknowledged being a participant in the forgery scheme. In his affidavit, Casati explained that, in August or September, 1995, Satesh Buddhu (Satesh), one of Casati's friends and the defendant's son, approached Casati and asked him if he wanted to make some additional money. Satesh told Casati that he would pay him $1000 if he would deposit a $50,000 check in his bank account, to which Casati agreed. A few days later, Satesh picked up Casati at Casati's place of employment and drove Casati to the bank. After Casati deposited the check into his savings account, Satesh brought him back to work but retained Casati's bankbook. Approximately one week later, Satesh again picked up Casati at work and brought him to the bank, where Casati withdrew approximately $9000 in cash. On three or four more occasions, Satesh drove Casati to the bank where Casati withdrew cash from his account. On each of those occasions, Satesh

retained Casati's bankbook after Casati had completed the transaction.

Casati explained further in his affidavit that, sometime thereafter, Satesh was called to serve in the National Guard in Texas. Before his departure, Satesh instructed Casati to go to the bank every few days, withdraw less than $10,000 in cash, place the money, along with the bankbook, in a sealed envelope labeled "AGNANI" or "AGANI," and give the envelope to Satesh's father, the defendant. Satesh further instructed Casati to give the envelope only to the defendant. Thereafter, each time Casati would withdraw money, he would place a telephone call to the defendant, meet the defendant at what Casati believed to be the defendant's residence at 958 Broad Street in Hartford, and pick up a sealed envelope from the defendant that contained the bankbook and that had the name "MIKE" written on the front. Casati would withdraw cash from his account and then return the cash and bankbook to the defendant in a sealed envelope. Casati repeated this cycle on several occasions until the bank account was depleted.

Sometime in October, 1995, Satesh returned from Texas and called Casati at home. Satesh asked Casati about his checking account number and the branch at which that account was located. Approximately one week later, Satesh called Casati and told him that he would pay him $200 to use Casati's checking account, and that a check in the approximate amount of $8000 had been deposited in that account and should have cleared. Casati agreed and attempted to make a withdrawal from that account, but the bank informed him that the check did not clear. Soon thereafter, Casati received the check in the mail, and Satesh went to Casati's residence to pick it up.

On the basis of the information Casati had provided, two police detectives from the Rocky Hill police depart-

ment, on November 21, 1995, applied for a warrant authorizing the search of the residence located at 958 Broad Street in Hartford and the seizure of, inter alia, bank account records, office equipment, and other items used in the manufacture of forged instruments. In the affidavit accompanying their application for the warrant, the detectives noted that they had verified, through a search of the records of the state department of motor vehicles, that Satesh and the defendant both had identified their residential address as 958 Broad Street in Hartford. The detectives further noted that, while executing a search warrant on Casati's person, they had discovered a business card in Casati's wallet bearing the business name "Phoenix Consulting Services" with an address of "958 Broad Street, Hartford." The card also listed the name "Deo" and indicated that the business engaged in accounting, tax preparation, and estate and financial planning.

In support of their application for a warrant, the detectives stated: "Based upon the information contained [in the affidavit in support of the warrant application], we . . . believe probable cause exists that evidence of the crimes of FORGERY and LARCENY will be found . . . within the residence and home operated business located at 958 Broad Street . . . [in] Hartford . . . ." The detectives also stated: "[B]ased upon [our] training and experience . . . we know [that] person(s) who engage in the manufacture of forged checks have in their possession and/or control a variety of office-type equipment to complete the forged documents. The office equipment utilized by such people include check-type paper, typewriter(s), check writer(s), computer(s), printer(s), recordings of reference materials and/or records of their accomplishments, and identification of other person(s) or businesses which are knowingly or unknowingly involved in the completion of said crimes."

On November 21, 1995, a search and seizure warrant was issued on the basis of the information contained in the detectives' application for a warrant and the accompanying affidavit. The warrant contained the following description of the place to be searched: "The residence of SATESH BUDDHU (date of birth 2/6/74) and [the defendant] DEOWRAJ S. BUDDHU (date of birth 9/18/42), 958 Broad Street, Hartford, Ct. This is also the business location of PHOENIX CONSULTING SERVICES, operated by [the defendant] Deo [Buddhu]."

On November 22, 1995, members of the Hartford and Rocky Hill police departments executed the search warrant at 958 Broad Street. The building on Broad Street that bore the number "958" was a three-story, multiunit dwelling, which had two unlabeled doors on each floor. Upon their arrival, the police officers ascended to the third floor of the building. As they reached the third floor, they noticed that there were two doors. The officers first knocked on the door on the left and then knocked on the door on the right. Satesh opened the door on the left and certain officers entered that unit and conducted a protective sweep[4] of all of the rooms therein. The police officers then asked Satesh where the defendant's room was located. Satesh told the officers that the defendant lived in the unit on the right. The police officers instructed Satesh to open the door on the right and Satesh complied, unlocking the door with a key. As a result of their search of the defendant's unit, the officers seized several items including computer equipment, computer media, records of forged documents, a United States Immigration and Naturalization Service rubber stamp, several completed and partially completed counterfeit American citizenship documents, and correspondence describing how forged

[4] See generally *Maryland* v. *Buie*, 494 U.S. 325, 110 S. Ct. 1093, 108 L. Ed. 2d 276 (1990).

citizenship documents could be used to obtain a United States passport and social security card.

The defendant subsequently was charged with numerous counts of second degree forgery and attempted second degree forgery, and with various other offenses, including attempt to commit first degree larceny as an accessory. See footnote 2 of this opinion. The defendant filed a motion to suppress the evidence seized from his residence. In support of his motion, the defendant contended that the warrant application and accompanying affidavit did not furnish probable clause to believe that the items sought would be found at his residence. In addition, the defendant contended that the warrant that ultimately was issued did not describe with sufficient particularity the place to be searched.

At a hearing on the defendant's motion to suppress, the detectives who applied for the warrant testified that they were aware that the building in which Satesh and the defendant resided was a multiunit dwelling and that Satesh and the defendant resided on the third floor, but that, due to an oversight, they had failed to specify in their application for the warrant that the third floor of the premises was the intended place to be searched. Additionally, the warrant that was issued indicated, and the detectives believed, that Satesh and the defendant resided at the same residence when, in fact, Satesh resided in the unit on the left and the defendant resided in the unit on the right. There was testimony at the suppression hearing indicating that Satesh's actual address was 960 Broad Street, apartment C-1, and that the defendant's actual address was 958 Broad Street, apartment C-2. There was additional testimony, however, that the single, front door entrance to the three-story building in which Satesh and the defendant resided bore only the number "958." In addition, there is no indication that the individual apartment doors on the third floor were labeled.

In granting the defendant's motion to suppress, the trial court concluded, inter alia, that probable cause did not exist to believe that the items sought by the detectives would be found at the defendant's residence and that the warrant's description of the place to be searched was overbroad "because it was based on a mistaken belief that there was only one residence on the third floor of the building at 958 Broad Street [in Hartford] and [that] both the defendant and Satesh . . . lived there together." The court subsequently granted the state's motion to dismiss in light of the court's ruling that the evidence supporting the defendant's prosecution had been illegally obtained and, therefore, would have been inadmissible in the state's case-in-chief. Thereafter, the trial court granted the state's motion for permission to appeal, and the state appealed to the Appellate Court.

On appeal, the Appellate Court affirmed the judgment of the trial court, concluding that the warrant did not satisfy the particularity requirement of the fourth amendment to the United States constitution. *State* v. *Buddhu*, supra, 65 Conn. App. 111. We granted the state's petition for certification to appeal limited to the following issues. "(1) Did the Appellate Court properly conclude that the search warrant in question did not satisfy the particularity requirement of the fourth amendment to the United States constitution? (2) If the answer to the first question is 'no,' did the trial court properly conclude that (a) the warrant was not supported by probable cause and (b) the search exceeded the scope of the warrant?" *State* v. *Buddhu*, 258 Conn. 928, 929, 783 A.2d 1031 (2001).

I

PROBABLE CAUSE

Generally, a search warrant satisfies the particularity requirement of the fourth amendment to the United

States constitution if it identifies the place or thing for which there is probable cause to search with sufficient definiteness to preclude indiscriminate searches. See *Maryland* v. *Garrison*, 480 U.S. 79, 84–85, 107 S. Ct. 1013, 94 L. Ed. 2d 72 (1987). We first address, therefore, whether the trial court properly concluded that probable cause did not exist to search the defendant's residence. If we determine that the trial court improperly concluded that probable cause did not exist, we then must determine whether the Appellate Court properly concluded that the warrant failed to satisfy the particularity requirement of the fourth amendment.

As a threshold matter, we address our standard of review. "Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on [that] issue, therefore, is subject to plenary review on appeal." (Internal quotation marks omitted.) *State* v. *Pappas*, 256 Conn. 854, 864, 776 A.2d 1091 (2001).

The law regarding probable cause and the standards for upholding the issuance of a search warrant are well established. "We uphold the validity of [a search] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed. . . . [T]he magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate. Whe[n] the circumstances for finding probable cause are detailed, whe[n] a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate

the warrant by application of rigid analytical categories. . . .

"Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . In determining the existence of probable cause to search, the issuing magistrate assesses all of the information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . We view the information in the affidavit in the light most favorable to upholding the magistrate's determination of probable cause. . . . In a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the [issuing judge's] determination. . . . Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." (Citations omitted; internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 172–73, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

In the present case, the trial court determined "that the warrant affidavit established probable cause to believe that the particular items sought to be seized [were] connected with criminal activity or [would] assist in a particular apprehension or conviction." (Internal quotation marks omitted.) The trial court concluded, however, "that the warrant affidavit failed to establish that there [was] probable cause to believe that the items sought to be seized [would] be [found] in the

place to be searched . . . ." (Internal quotation marks omitted.) Specifically, the trial court concluded that, "because the affidavit failed to establish a reasonable basis for believing that the defendant was aware of the criminal activities, and because the last transfer of envelopes that occurred through the defendant occurred more than a month before Casati gave his statement to the police, and because there were no other documented connections to the residence, it was unreasonable to conclude that there was probable cause to believe that the fruits of these alleged crimes would be present at the residence of Satesh . . . or the defendant."

The trial court concluded, with respect to the defendant's home office, that: "A review of the warrant affidavit reveals no links between Satesh . . . and the residence or office with the exception that he supposedly lived with [the defendant] who maintained an office in their home. There is no claim in the affidavit that either of the [detectives who applied for the warrant] or Casati ever saw the layout of the apartment. There is no claim . . . in the affidavit that either of the [detectives] or Casati knew if the office was self-contained or was just a desk in an unlocked room. There is no claim in the affidavit that Satesh . . . had access to the office, even though it was located in the apartment he shared with the defendant. Presuming that the defendant was unaware of the criminal activities that [Satesh] was allegedly involved [in] (as is the only reasonable presumption in light of the facts alleged in the affidavit) it would be illogical to believe that Satesh would have stored the fruits of his criminal activities in [the defendant's] office [when the defendant] was unaware of the fact that these activities were occurring. Thus, in the event that the warrant was intended by the issuing magistrate to authorize the search of the defendant's office, th[e] court finds that such a finding was errone-

ous. There were no facts alleged in the affidavit . . . sufficient to establish probable cause to believe that the items to be seized would be found in the office of Phoenix Consulting Services."

The trial court's conclusion that there was no probable cause to search the defendant's residence and office, therefore, was based on its determination that the facts in the affidavit led to only one reasonable inference, namely, that the defendant was unaware of Satesh's illegal activities. On the basis of this determination, the trial court reasoned that, if the defendant was not involved in Satesh's illegal activities, the only nexus between the defendant and the fruits of the crime was the defendant's receipt and retention of the sealed envelopes containing the money and Casati's bankbook, which ended approximately one month before the search. Thus, the trial court concluded "that there was not sufficient evidence upon which to base a finding of probable cause to search the defendant's residence."

We conclude that the trial court improperly determined that the warrant affidavit contained insufficient facts upon which to base a finding of probable cause to search the defendant's residence and office. The facts contained in the warrant affidavit were sufficient to allow the judge issuing the warrant reasonably to conclude that probable cause existed to believe that the defendant was involved in Satesh's illegal activities.

"[I]t is axiomatic that [a] significantly lower quant[um] of proof is required to establish probable cause [rather] than guilt." (Internal quotation marks omitted.) *State* v. *Bova*, 240 Conn. 210, 232, 690 A.2d 1370 (1997). "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub

silentio impose a drastically more rigorous definition of probable cause than the security of our citizens' [sic] demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." (Citation omitted; internal quotation marks omitted.) *Illinois* v. *Gates*, 462 U.S. 213, 243–44 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983).

In the present case, Casati stated in the warrant affidavit that he had been introduced to the defendant by Satesh before Satesh departed for National Guard duty. Satesh also instructed Casati not to give the envelope containing his bankbook and the money to anyone but the defendant while Satesh was away. Casati further stated that, while Satesh was away, he met with the defendant on two or three occasions at 958 Broad Street, which Casati believed to be the residence of Satesh and the defendant. The fact that the envelopes were sealed when Casati relinquished them to the defendant does not compel the conclusion that the defendant was unaware of Satesh's illegal activities. Thus, contrary to the trial court's determination that there was only one reasonable interpretation of the facts alleged in the warrant affidavit, we conclude that the issuing judge reasonably inferred that the defendant, having received, on several occasions, sealed envelopes on Satesh's behalf from a relatively unfamiliar person, probably was involved in the underlying illegal activities. Although the trial court's interpretation of the facts alleged in the warrant affidavit is a plausible interpretation, it is by no means the only reasonable interpretation.

Furthermore, it is axiomatic that we review the issuance of a warrant with deference to the reasonable inferences that the issuing judge could have and did draw. See *State* v. *Respass*, supra, 256 Conn. 172. "When

reviewing an application [for a warrant], courts must also bear in mind that search warrants are directed . . . not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of [a] crime will be found. . . . The affidavit in support of a warrant need not present information that would justify the arrest of the individual in possession of or in control of the property. Nor is it required that the owner be suspected of having committed a crime. Property owned by a person absolutely innocent of any wrongdoing may nevertheless be searched under a valid warrant." (Citations omitted.) *United States* v. *Tehfe*, 722 F.2d 1114, 1117–18 (3d Cir. 1983), cert. denied, 466 U.S. 904, 104 S. Ct. 1679, 80 L. Ed. 2d 154 (1984).

In the present case, the warrant affidavit at least contained sufficient facts to establish probable cause to believe that the defendant's office equipment was used in the illegal activities even if the defendant was, in fact, innocent and lacked knowledge of Satesh's illegal activities. For example, the defendant and Satesh were related. Also, they obviously had a relationship with one another based on the fact that Satesh had introduced the defendant to Casati and trusted the defendant to receive envelopes from Casati while Satesh was away. Satesh and the defendant resided in close proximity. The facts in the warrant affidavit established, at a minimum, that Satesh and the defendant lived in the same building. The warrant affidavit also established that the defendant operated a financial services business out of his residence and likely possessed the type of office equipment that could be used to forge checks. Therefore, we conclude that the warrant affidavit contained sufficient facts to allow the judge issuing the warrant reasonably to conclude that it was probable that Satesh had access to the defendant's office equipment and had used that equipment in furtherance of the illegal check forging activities regardless of whether the defendant was

directly involved in those activities or had knowledge of them.

Having concluded that the warrant affidavit contained sufficient facts to allow the judge issuing the warrant to conclude that probable cause existed to believe that the defendant was involved in [Satesh's] illegal forgery scheme, or at least that probable cause existed to believe that Satesh had access to the defendant's office equipment and had used that equipment in furtherance of the illegal forgery scheme, we now consider whether the information contained in the warrant affidavit was stale. "The determination of probable cause to conduct a search depends in part on the finding of facts so closely related to the time of the issuance of the warrant as to justify a belief in the continued existence of probable cause at that time. . . . Although it is reasonable to infer that probable cause dwindles as time passes, no single rule can be applied to determine when information has become too old to be reliable. . . . Consequently, whether a reasonable likelihood exists that evidence identified in the warrant affidavit will be found on the subject premises is a determination that must be made on a case-by-case basis. Accordingly, we have refused to adopt an arbitrary cutoff date, expressed either in days, weeks or months, beyond which probable cause ceases to exist. . . . Moreover, we have recognized that [i]f items of property are innocuous in themselves or not particularly incriminating and are likely to remain on the premises, that fact is an important factor to be considered in determining the staleness of a warrant." (Citations omitted; internal quotation marks omitted.) *State* v. *Bova,* supra, 240 Conn. 232–33. "The likelihood that the evidence sought is still in place depends on a number of variables, such as the nature of the crime, of the criminal, of the thing to be seized, and of the place to be searched. . . . [W]hen an activity is of a protracted and continuous

nature the passage of time becomes less significant." (Citations omitted; internal quotation marks omitted.) *United States* v. *Tehfe*, supra, 722 F.2d 1119.

In the present case, the detectives seeking the warrant stated in the warrant affidavit: "[B]ased upon [our] training and experience . . . we know person(s) who engage in the manufacture of forged checks have in their possession and/or control a variety of office-type equipment to complete the forged documents. The office equipment utilized by such people include check-type paper, typewriter(s), check writer(s), computer(s), printer(s), recordings of reference materials and/or records of their accomplishments, and identification of other person(s) or businesses which are knowingly or unknowingly involved in the completion of [forgeries]."

The warrant affidavit contained facts sufficient to demonstrate that: (1) the defendant operated a financial services business out of his residence at 958 Broad Street; (2) a person who is involved in the manufacture of forged checks probably has in his possession or control a variety of office equipment, which likely would include items used by a financial services business such as the defendant's business; (3) it was probable that the defendant was involved in Satesh's illegal activities, or, at least, it was probable that Satesh had access to the defendant's office equipment and used the equipment in furtherance of the illegal forgery scheme; (4) the warrant would list several items subject to seizure that were innocuous and not intrinsically incriminating; and (5) the criminal activity was ongoing in nature, occurring over a period of several months, including the same month in which the warrant was executed. In light of the foregoing facts, the fact that Casati did not have personal contact with the defendant for approximately one month before the warrant was issued does not compel the conclusion that the information contained in the warrant affidavit was stale. We

conclude, therefore, that probable cause existed to search the defendant's residence and office when the warrant was issued.

## II

## PARTICULARITY

We next address the issue of whether the warrant satisfied the particularity requirement of the fourth amendment to the United States constitution. "Whether a warrant is sufficiently particular to pass constitutional scrutiny presents a question of law that we decide de novo." *United States* v. *George,* 975 F.2d 72, 75 (2d Cir. 1992).

In the present case, the warrant contained the following description of the place to be searched: "The residence of SATESH BUDDHU (date of birth 2/6/74) and [the defendant] DEOWRAJ S. BUDDHU (date of birth 9/18/42), 958 Broad Street, Hartford, Ct. This is also the business location of PHOENIX CONSULTING SERVICES, operated by [the defendant] Deo [Buddhu]." The warrant, therefore, limited the scope of the search to the residence of Satesh and the residence and office of the defendant.

The Appellate Court's conclusion that the warrant failed to satisfy the particularity requirement of the fourth amendment was based on its reliance on *Maryland* v. *Garrison,* supra, 480 U.S. 85, for the proposition that if the detectives reasonably could have determined that the defendant's residence was located in a multiunit building, they were required to disclose that information to the judge issuing the warrant in order to satisfy the particularity requirement. See *State* v. *Buddhu,* supra, 65 Conn. App. 109–11. We disagree with the Appellate Court's interpretation of *Garrison.*

First, as the Appellate Court correctly stated in *State* v. *Burgos,* 7 Conn. App. 265, 508 A.2d 795 (1986), "[a]

search warrant directed against a multiple-occupancy structure . . . will be deemed valid if it describes the particular subunit to be searched with sufficient definiteness to preclude a search thereunder of other units located in the larger structure and occupied by innocent persons. . . . A more particular description obviously lessens the likelihood of a general search of such a structure. The particularity requirement will be met by including the correct address of the building and by naming the individual whose apartment is to be searched." (Citations omitted; internal quotation marks omitted.) Id., 268–69. In the present case, the warrant satisfied the *Burgos* test inasmuch as it included the correct address of the building and named the individuals whose residence was to be searched.

The court in *Garrison*, unlike the Appellate Court in *Burgos*, however, did not decide the "particularity" issue by determining whether the warrant at issue properly described the particular unit in a multiunit dwelling that the officers intended to search. Rather, the court focused on the validity of the issuance and execution of the warrant based on what investigating officers knew, or should have known, when they applied for and executed the warrant. See generally *Maryland* v. *Garrison*, supra, 480 U.S. 84–86.

In *Garrison*, "police officers obtained and executed a warrant to search the person of Lawrence McWebb and 'the premises known as 2036 Park Avenue third floor apartment.' When the police applied for the warrant and when they conducted the search pursuant to the warrant, they reasonably believed that there was only one apartment on the premises described in the warrant. In fact, the third floor was divided into two apartments, one occupied by McWebb and one by [the defendant, Garrison, who presumably was an innocent and unrelated party]. Before the officers executing the warrant became aware that they were in a separate

apartment occupied by [Garrison], they had discovered the contraband that provided the basis for [Garrison's] conviction for violating Maryland's Controlled Substances Act. The question presented [in *Garrison* was] whether the seizure of that contraband was prohibited by the Fourth Amendment." Id., 80.

As a threshold matter, the court in *Garrison* stated that "the case present[ed] two separate constitutional issues, one concerning the validity of the warrant and the other concerning the reasonableness of the manner in which it was executed." Id., 84. The court began its analysis of the first issue by reviewing the law regarding particularity. The court stated that "[t]he Warrant Clause of the Fourth Amendment categorically prohibits the issuance of any warrant except one particularly describing the place to be searched and the persons or things to be seized. The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the [f]ramers intended to prohibit. Thus, the scope of a lawful search is defined by the object of the search and the places in which there is probable cause to believe that it may be found." (Internal quotation marks omitted.) Id.

The court in *Garrison* declared that the benefit of hindsight does not determine whether the warrant was validly issued. See id., 85. Rather, the dispositive issue is "whether [a] factual mistake invalidate[s] a warrant that undoubtedly would have been valid if it had reflected a completely accurate understanding of the building's floor plan." Id. In resolving this issue, the court in *Garrison* stated that, "[p]lainly, if the officers had known, or even if they should have known, that

there were two separate dwelling units on the third floor of 2036 Park Avenue, they would have been obligated to exclude [Garrison's] apartment from the scope of the requested warrant. But we must judge the constitutionality of their conduct in light of the information available to them at the time they acted. Those items of evidence that emerge after the warrant is issued have no bearing on whether . . . a warrant was validly issued. Just as the discovery of contraband cannot validate a warrant invalid when issued . . . it [is] equally clear that the discovery of facts demonstrating that a valid warrant was unnecessarily broad does not retroactively invalidate the warrant. The validity of the warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing [m]agistrate." Id.

In the present case, the defendant similarly claims that the officers reasonably could have discovered, and had a duty to disclose to the judge issuing the warrant, that the defendant resided in a multiunit building and that the defendant and Satesh resided in separate residences within that building. Contrary to the Appellate Court's conclusion in the present case; see *State* v. *Buddhu*, supra, 65 Conn. App. 111; however, the court in *Garrison* did not hold, explicitly or implicitly, that officers have a duty to disclose to the judge issuing the warrant that a residence is located in a multiunit building. The court in *Garrison* merely held that if the police knew, or should have known, that the third floor of the multiunit building contained additional residences for which there was no probable cause to search, the officers would have had a duty to exclude those residences from the warrant application. See *Maryland* v. *Garrison*, supra, 480 U.S. 84–85. Thus, *Garrison* stands for the limited proposition that police officers have a duty to disclose *material* information that they discover or reasonably should discover and

that reasonably would promote a narrower description of the place to be searched, so as to preclude indiscriminate searches of places for which there is no probable cause to search.

We note that the facts in the present case are unusual. Specifically, the warrant in the present case was directed at a single residence, but the individuals named in the warrant, in fact, resided in two distinct residences in the same building, on the same floor. The warrant, therefore, inadvertently authorized the search of two distinct residences. Although the issue of whether the police had probable cause to search Satesh's residence is not directly at issue in this appeal, we address that issue because if the warrant affidavit in the present case established independent probable cause to search both Satesh's residence and the defendant's residence, then a *Garrison* inquiry into what the police officers knew, or should have known, about the living arrangements of the defendant and Satesh is unnecessary.

The affidavit submitted in support of the issuance of the warrant clearly demonstrates that Satesh was the primary suspect in the illegal forgery scheme. Additionally, the detectives stated in the affidavit that their "police investigative training and experience ha[d] provided [them] with the knowledge that persons who participate in white-collar fraud-type crimes are often meticulous in maintaining records of their efforts. The people who commit such crimes oftentimes do not begin their illegal enterprise with a large fraud as described herein, but operate in a continuing, growing enterprise. Accordingly, they tend to perfect their actions as their actions continue. In order to develop and increase their profits, they maintain records as well as supplies to advance themselves. Furthermore, in order to maintain such records from discovery, the records are maintained in a location where the perpetrator feels comfortable and protected. An area [where]

such a perpetrator would experience such security would be their [sic] residence."

Thus, the detectives, in applying for the warrant at issue, sought and ultimately received permission to seize, in addition to the defendant's office equipment, items that were personal to Satesh and likely would be found at Satesh's residence, regardless of whether he resided with the defendant or in a separate residence in the same building. For example, the issuing judge included in the search warrant all of Satesh's checking and savings account records, as well as written records identifying the acquisition and disbursement of fraudulently obtained money or valuables. We conclude, therefore, that there was probable cause to search the residence of Satesh when the warrant was issued regardless of whether he resided with the defendant or in a separate residence in the same building.

Thus, even if the officers in the present case knew, or should have known, that Satesh and the defendant resided in separate residences in a multiunit building, there was no risk that the description of the place to be searched, albeit inaccurate, would have resulted in the search of a place for which there was no probable cause to search in violation of the particularity requirement of the fourth amendment to the United States constitution. We conclude, therefore, that the warrant in the present case was validly issued because: (1) it included the correct address of the building, as indicated on the outside of the building; (2) it specifically named Satesh and the defendant; and (3) probable cause existed to search both the unit in which Satesh resided and the separate unit in which the defendant resided.

The second issue that the United States Supreme Court addressed in *Garrison* was the reasonableness of the manner in which the warrant was *executed*. The

court stated in *Garrison* that "[t]he question whether the execution of the warrant violated [Garrison's] constitutional right to be secure in his home is somewhat less clear. . . . [T]he officers' entry into the third-floor common area was legal; they carried a warrant for those premises, and they were accompanied by McWebb, who provided the key that they used to open the door giving access to the third-floor common area. If the officers had known, or should have known, that the third floor contained two apartments before they entered the living quarters on the third floor, and thus had been aware of the error in the warrant, they would have been obligated to limit their search to McWebb's apartment. Moreover, as the officers recognized, they were required to discontinue the search of [Garrison's] apartment as soon as they discovered that there were two separate units on the third floor and therefore were put on notice of the risk that they might be in a unit erroneously included within the terms of the warrant. The officers' conduct and the limits of the search were based on the information available as the search proceeded. While the purposes justifying a police search strictly limit the permissible extent of the search, the [c]ourt has also recognized the need to allow some latitude for honest mistakes that are made by officers in the dangerous and difficult process of making arrests and executing search warrants." Id., 86–87.

Similarly, the officers in the present case limited their search to the areas for which the warrant affidavit established probable cause to believe that the items to be seized would be located. Unlike the officers in *Garrison*, however, the officers in the present case were not required to discontinue their search as soon as they discovered that there were two separate units on the third floor. First, unlike in *Garrison*, the officers in the present case were not conducting their search in a residence for which there was no probable cause to

search. Second, as we previously concluded, there was no risk of an indiscriminate search because the warrant: (1) included the correct address of the building, as indicated on the outside of the building; and (2) specifically named Satesh and the defendant. Thus, because the officers acted reasonably based on the unusual facts and circumstances of the present case, we conclude that the officers properly executed the warrant.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to reverse the judgment of the trial court and to remand the case to that court with direction to deny the defendant's motion to suppress and for further proceedings according to law.

In this opinion the other justices concurred.