******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* CARMELITO
RODRIGUEZ
(AC 37023)

Beach, Prescott and Bear, Js.

*Argued September 25, 2015—officially released February 23, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Kahn, J. [motion to suppress]; Devlin, J.
[judgment].)

*G. Douglas Nash*, for the appellant (defendant).

*Aimee Lynn Mahon*, certified legal intern, with whom
were *Nancy L. Chupak*, senior assistant state's attor-
ney, and, on the brief, *John C. Smriga*, state's attorney,
and *C. Robert Satti*, *Jr.*, supervisory assistant state's
attorney, for the appellee (state).

*Opinion*

BEACH, J. The defendant, Carmelito Rodriguez, appeals from the judgment of conviction rendered following a conditional plea of nolo contendere[1] to two counts of possession of a narcotic substance with intent to sell in violation of General Statutes § 21a-278 (b).[2] The defendant claims that the trial court erred in denying his motion to suppress certain evidence seized from his residence, on the ground that the affidavit in support of the search warrant did not provide probable cause for the issuance of the warrant. We affirm the judgment of the trial court.

The record reveals the following facts. On September 21, 2012, three individuals were arrested in Bridgeport for possession of a large quantity of heroin. One of the arrested individuals provided information to Bridgeport law enforcement officers about a mid-level drug supplier and provided details about that supplier's heroin sales at 144 Cedar Street in Bridgeport, which residence was owned by a third party. Relying primarily on information provided by the informant, police officers applied for a search warrant and averred in the accompanying affidavit: "That on 09/12/2012, members of the Bridgeport Police Departments Tactical Narcotics Team . . . along with members from the FBI Task Force, arrested three individuals in the City of Bridgeport. That the three arrested suspects were found in possession of a large quantity of heroin at the time of their arrests. . . . That one of the arrested suspects cooperated with officers, giving us details of a mid level supplier of heroin in the City of Bridgeport. This arrested suspect stated a male known to him as 'Milo' is supplying numerous drug dealers in Bridgeport with large amounts of heroin. He/she stated that 'Milo' resides on the second [floor] apartment of 144 Cedar Street in Bridgeport. . . . That this arrested suspect stated that he/she has been in 'Milo's' apartment more than a dozen times in the past month. That he/she has observed 'Milo' package the heroin on the table in the basement on numerous occasions during these times. He/She added that 'Milo' stores several firearms in the residence, basement and second floor apartment. That a safe is kept in the basement where 'Milo' keeps his heroin and that money from drug sales are kept in his apartment. . . . That this arrested suspect stated he/she has been in 'Milo's' apartment and basement within the past two days and observed 'Milo' in possession of a large amount of heroin. That this arrested suspect described 'Milo' as a Hispanic male in his late thirties, approximately six feet tall, medium skin and a stocky build. 'Milo' is also described as having tattoos [on] both arms. . . . That during the past week, members of the FBI Task Force and members of the Bridgeport Police Tactical Narcotics Team conducted a Narcotics Investigation which led . . . to the arrest of the three

arrested suspects on today's date. That during this investigation, Task Force member Officer Daid Reihl observed one of the arrested suspects entering and leaving 144 Cedar Street within the last two days." The next paragraph of the affidavit recited conclusions supporting probable cause based on the knowledge and experience of the affiants. The warrant application was granted.

At approximately 1 p.m., members of the Bridgeport Police Department entered and secured the premises at 144 Cedar Street and seized, inter alia, a substantial quantity of illegal narcotics. The defendant was arrested and charged with, inter alia, two counts of possession of narcotics with intent to sell. In March, 2013, the defendant filed a motion to suppress evidence obtained as a result of the search of 144 Cedar Street. Following an evidentiary hearing, the court issued a memorandum of decision denying the defendant's motion to suppress. The court found that the affidavit in support of the search warrant provided a sufficient factual basis as to the confidential informant's basis of knowledge, his veracity, and reliability on which to conclude that probable cause existed for the issuance of the warrant.

The defendant entered pleas of nolo contendere to two counts of possession of narcotics with intent to sell, conditioned on his right to appeal from the court's denial of his motion to suppress. The trial court determined that the ruling on the motion to suppress was dispositive of the case. The pleas were accepted and a judgment of guilty was rendered. The defendant was sentenced to a total effective sentence of eighteen years incarceration, execution suspended after nine years, followed by five years probation. This appeal followed.

Our review of the question of whether an affidavit in support of an application for a search warrant provides probable cause for the issuance of the warrant is plenary. *State* v. *Buddhu*, 264 Conn. 449, 459, 825 A.2d 48, cert. denied, 541 U.S. 1030, 124 S. Ct. 2106, 158 L. Ed. 2d 712 (2004). We consider the four corners of the affidavit and, giving proper deference to the issuing magistrate, determine whether the issuing magistrate reasonably could have concluded that probable cause existed. See *State* v. *Flores*, 319 Conn. 218, 225–26, 125 A.3d 157 (2015); *State* v. *Barton*, 219 Conn. 529, 548, 594 A.2d 917 (1991).

We are guided by the following standards. "The fourth amendment to the United States constitution prohibits unreasonable searches and seizures and requires a showing of probable cause prior to the issuance of a search warrant. Probable cause to search exists if . . . (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found

in the place to be searched. . . . Although [p]roof of probable cause requires less than proof by a preponderance of the evidence . . . [f]indings of probable cause do not lend themselves to any uniform formula because probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules. . . . Consequently, [i]n determining the existence of probable cause to search, the issuing [judge] assesses all of the information set forth in the warrant affidavit and should make a practical, nontechnical decision whether . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place. . . . This determination is made pursuant to a totality of circumstances test. . . .

"This court has recognized that because of our constitutional preference for a judicial determination of probable cause, and mindful of the fact that [r]easonable minds may disagree as to whether a particular [set of facts] establishes probable cause . . . we evaluate the information contained in the affidavit in the light most favorable to upholding the issuing judge's probable cause finding. . . . We therefore review the issuance of a warrant with deference to the reasonable inferences that the issuing judge could have and did draw . . . and we will uphold the validity of [the] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the [issuing judge's] conclusion that probable cause existed. . . . Finally, [i]n determining whether [a] warrant was based [on] probable cause, we may consider only the information that was actually before the issuing judge at the time he or she signed the warrant, and the reasonable inferences to be drawn therefrom. . . .

"When an affidavit is based on hearsay information from an informant, rather than on the personal observations of the affiant, the veracity or reliability and basis of knowledge of [the informant] are highly relevant in the issuing judge's analysis of the totality of the circumstances. . . . In cases where an informant is as yet untested, this court has employed several methods by which to judge the information's reliability or the informant's credibility. Three of the most common factors used to evaluate the reliability of an informant's tip are (1) corroboration of the information by police, (2) declarations against penal interest by the informant-declarant, and (3) the reputation and past criminal behavior of the suspect." (Citations omitted; internal quotation marks omitted.) *State* v. *Flores*, supra, 319 Conn. 224–26.

While this appeal was pending, our Supreme Court decided *State* v. *Flores*, supra, 319 Conn. 218.[3] That case is similar in many respects to the present case. In *Flores*, the affidavit in support of the search and seizure warrant averred the following facts: "On January 27, 2010,

Rafley Santiago was arrested by Meriden [p]olice for crimes related to being in possession of a stolen dirt bike, and various other motor vehicle charges. Santiago requested to speak with someone regarding information he had, that would be of interest to [p]olice. . . . [Detective Angelo] Stavrides [of the Meriden Police Department] notified Santiago of his *Miranda*[4] rights, which he waived. . . . Stavrides conducted an interview of Santiago. The interview was audio recorded, in a patrol interview area, at [p]olice [h]eadquarters. . . . Santiago stated among other things that he regularly purchases marijuana, approximately every [three] days, from [the] 215 Camp Street, third floor apartment. He stated [that] he has been making such purchases, for the last month or two. Santiago stated he purchases [one] or [two] bags of marijuana each time, from a male subject he only knew as 'John.' He stated he pays 'John' $10 for each bag of marijuana. Santiago stated [that] 'John' has long hair, and many people frequent the apartment. . . . Each of the estimated [twenty] purchases Santiago made from [the] apartment, all came from within that apartment, within the last two months. Santiago stated [that] the last time he purchased marijuana [from the apartment] was [four] days prior to the date of the statement he made to . . . Stavrides. Santiago's last purchase was made on Saturday, January 23, 2010. . . . The affidavit also described the officers' knowledge regarding the conduct of individuals who are involved in the sale and use of controlled substances, including that, through their experience, they know that such persons routinely store illegal contraband in the location from which they base their sales." (Footnote in original; internal quotation marks omitted.) Id., 221–22. A search warrant was issued on the basis of the facts contained in the affidavit. Id., 222.

The defendant sought to exclude the fruits of the subsequent search on the ground that the warrant had been issued without probable cause. Id., 223. Our Supreme Court reasoned: "[T]here is no dispute that Santiago was a first time informant and that the officers did not undertake any independent corroboration of his statement, nor did they have any information regarding the defendant's past criminal behavior that might bolster the reliability of Santiago's statement. Indeed, for these reasons, we recognize that these facts present a particularly close case as to whether the issuing judge reasonably could have concluded that the information relayed by Santiago was reliable, and that his statement therefore supported a finding of probable cause. In light of the deference we give to an issuing judge's finding of probable cause, however, because Santiago was a named informant who gave a statement against his penal interest, we agree with the state that the judge could have reasonably credited his statement.

"First, that Santiago was named in the affidavit and gave his statement in person at police headquarters

can be significant in the determination of whether the information he provided was reliable. In such circumstances, the police can observe the informant's demeanor to determine his . . . credibility, and the informant runs the greater risk that he may be held accountable if his information proves false. . . . Indeed, as this court has repeatedly recognized, [t]he fact that an informant's identity is known . . . is significant because the informant could expect adverse consequences if the information that he provided was erroneous. Those consequences might range from a loss of confidence or indulgence by the police to prosecution for . . . falsely reporting an incident under General Statutes § 53a-180[c], had the information supplied proved to be a fabrication. . . . We disagree with the defendant's contention that naming Santiago in the affidavit provided no indicia of reliability because his statement relayed historical information. Because Santiago indicated that marijuana was being sold out of the apartment on a continuous basis, had the officers not uncovered any evidence of contraband, he could have expected adverse consequences for relaying false information. More importantly, however, Santiago made a statement against his penal interest when he admitted to purchasing marijuana, not once, but on as many as twenty occasions in the two months preceding the issuance of the search warrant, with the most recent purchase occurring only four days before he gave his statement to police." (Citations omitted; footnote omitted; internal quotation marks omitted.) Id., 227–28.

Our Supreme Court stated that *Flores* was a "particularly close case" in light of the facts that the warrant was based on a statement given by "a first time informant and that the officers did not undertake any independent corroboration of his statement, nor did they have any information regarding the defendant's past criminal behavior that might bolster the reliability of [the informant's] statement." Id., 227. Applying the required degree of deference to the reasonable inferences the issuing judge could have drawn from the information provided in the affidavit in support of the warrant; see id., 225–26; including that the informant's identity was known[5] and that he gave a statement against his penal interest in that he admitted that he had purchased marijuana from the defendant on multiple occasions, the issuing judge reasonably could have concluded that the information was reliable and that his statements supported a finding of probable cause. Id., 227–28, 233.

The affidavit in the present case more strongly supports a finding of probable cause than the affidavit in *Flores*. As in *Flores*, the identity of the informant in the present case was known to the police and he gave a statement against his penal interest, in which he described the defendant's drug dealing operation conducted in the defendant's residence. The informant in

the present case reported that he had made more than a dozen visits to the defendant's residence in the preceding month and one within two days of the issuance of the warrant. The defendant in the present case argues that the informant did not make a direct admission of criminal activity and that there was no basis for inferring criminal activity by the informant; thus, the statements were not made against the informant's penal interest. A magistrate reasonably could infer, however, that the informant's recitation of the frequent visits to the defendant's heroin packaging facility, as described in the affidavit, including one visit two days before his arrest, at which time, a large quantity of heroin was found in his possession, was contrary to his penal interest. The informant's detailed description of the criminal activity which he observed during his visits was also consistent with his own potential criminal liability.

Additionally, the informant's information in this case was more detailed than that in *Flores*: here the informant stated that he had observed the defendant with large amounts of heroin, observed him package heroin on the table in the basement of the residence, and saw that the defendant stored several firearms in the basement and second floor apartment and that the defendant kept a safe in the basement, where he stored heroin and money received from drug sales. The physical description of the defendant was detailed as well. The level of detail in a confidential informant's tip can be a factor to consider in assessing reliability. See *Illinois* v. *Gates*, 462 U.S. 213, 234, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983) ("[an] explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles [a] tip to greater weight than might otherwise be the case"); see also *State* v. *Ocasio*, 112 Conn. App. 737, 749, 963 A.2d 1109 (level of detail of confidential informant's tip one factor in weighing credibility), cert. denied, 292 Conn. 904, 973 A.2d 106 (2009).

Furthermore, here, unlike in *Flores*, there was some independent corroboration by the police of the informant's statement. Members of the task force arrested the informant and two others on drug charges relating to a large quantity of heroin in their possession, on the same day as, but prior to, the arrest of the defendant. Additionally, within the two day period immediately preceding the arrests, the police task force had observed one of the arrested suspects enter and leave 144 Cedar Street. This observation provided some corroboration of the informant's statement that the defendant was a drug dealer. The defendant argues that the observation was partial corroboration at best and not sufficiently significant to support the reliability of the informant's tip. Although the corroboration was not especially detailed or strong, it nonetheless provided *some* additional support, in the totality of the circumstances, for the finding that the informant's information

was reliable.

On the basis of the record and the standards enunciated in our Supreme Court's decision in *Flores*, we conclude that the issuing judge reasonably could have concluded, on the basis of the facts recited in the affidavit and reasonable inferences drawn therefrom, that, in the totality of the circumstances, the affidavit contained probable cause for the issuance of the warrant. Accordingly, the trial court did not err in denying the defendant's motion to suppress the evidence seized from his residence during the execution of the search warrant.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 54-94a provides in relevant part that "[w]hen a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. . . ." The trial court made such a determination in this matter.

[2] The defendant also was charged with two counts of possession of narcotics in violation of § 21a-278 (a) and one count of possession of narcotics with intent to sell within 1500 feet of a public school in violation of General Statutes § 21a-278a (b). The state entered a nolle prosequi as to those charges.

[3] Following oral argument in this court, we gave the parties the opportunity to file simultaneous supplemental briefs "addressing the effect of *State* v. *Flores*, [supra] 319 Conn. 218 . . . if any, on the resolution of the appeal in this case." Both parties filed supplemental briefs.

[4] *Miranda* v. *Arizona*, 384 U.S. 436, 478–79, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[5] If the police know the identity of the informant, they "can observe the informant's demeanor . . . and the informant runs the greater risk that he may be held accountable if his information proves false." (Internal quotation marks omitted.) *State* v. *Flores*, supra, 227.