# STATE OF CONNECTICUT *v.* KAREEM R. BATTS
## (SC 17724)

Borden, Katz, Palmer, Vertefeuille and Zarella, Js.

Argued January 11—officially released March 20, 2007

*Ruth Daniella Weissman*, special public defender, for the appellant (defendant).

*Timothy J. Sugrue*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cynthia Serafini*, senior assistant state's attorney, for the appellee (state).

*Opinion*

KATZ, J. The defendant, Kareem R. Batts, appeals from the judgment of conviction, rendered after his conditional plea of nolo contendere, of two counts of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of General Statutes (Rev. to 2003) § 21a-278 (a),[1] and one count of possession of narcotics with intent to sell in violation of

---

[1] General Statutes (Rev. to 2003) § 21a-278 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of heroin, methadone or cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form or a substance containing five milligrams or more of lysergic acid diethylamide, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. The execution of the mandatory minimum sentence imposed by the provisions of this subsection shall not be suspended except the court may suspend the execution of such mandatory minimum sentence if at the time of the commission of the offense (1) such person was under the age of eighteen years, or (2) such person's mental capacity was significantly impaired but not so impaired as to constitute a defense to prosecution."

General Statutes § 21a-277 (a).[2] The defendant contends that the trial court improperly denied: (1) his motion to suppress evidence seized incident to his arrest as a result of an unlawful investigatory detention; (2) his request for an evidentiary hearing pursuant to *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), to challenge the truthfulness of an affidavit supporting the search warrant for his residence; and (3) his motion to suppress evidence seized from his residence pursuant to that search warrant. The defendant contends that these improprieties infringed on his rights under the fourth and fourteenth amendments to the United States constitution[3] and under article first, §§ 7 and 9, of the Connecticut constitution.[4] We affirm the judgment.

[2] General Statutes § 21a-277 (a) provides: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person any controlled substance which is a hallucinogenic substance other than marijuana, or a narcotic substance, except as authorized in this chapter, for a first offense, shall be imprisoned not more than fifteen years and may be fined not more than fifty thousand dollars or be both fined and imprisoned; and for a second offense shall be imprisoned not more than thirty years and may be fined not more than one hundred thousand dollars, or be both fined and imprisoned; and for each subsequent offense, shall be imprisoned not more than thirty years and may be fined not more than two hundred fifty thousand dollars, or be both fined and imprisoned."

[3] The fourth amendment to the United States constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The fourteenth amendment to the United States constitution, § 1, provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[4] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

The trial court, *O'Keefe, J.*, reasonably found the following facts based on testimony at the hearings on the defendant's motions to suppress. On November 3, 2003, at 1:20 p.m., Waterbury police officer H. David Setzer and two other officers were on patrol in Waterbury. The officers were in an unmarked police car, but were in uniform. Setzer saw the defendant, whom he suspected of drug related activities, driving a car in a high crime area. Setzer knew that the defendant was on parole and had obtained information from the defendant's parole officer two to three weeks earlier that the defendant's motor vehicle operator's license had been suspended. The defendant pulled his car over to a stop, not due to any action by the officers. Setzer parked his vehicle, got out and approached the defendant, who remained in his car. The defendant then rolled down his window, and Setzer smelled the odor of marijuana coming from the car. Setzer asked the defendant for the marijuana, and the defendant handed Setzer a marijuana cigarette. The officers placed the defendant under arrest and then conducted a search incident to the arrest, which yielded crack cocaine and cash.

The record reveals the following additional facts and procedural history. Later that same day, Setzer and Waterbury police detective Robert Cizauskas applied for a search warrant for the defendant's residence at 2 Crestwood Road, apartment five, in Waterbury. In support of the warrant application, Setzer and Cizauskas submitted an affidavit attesting to information they had received from a confidential informant regarding drug activity by the defendant, including a controlled buy that the police had conducted during the week of October 17, 2003, between the confidential informant and the defendant. The affidavit also attested

Article first, § 9, of the Connecticut constitution provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

to the facts relating to the defendant's arrest earlier that day, specifically, that the search incident to the arrest had produced crack cocaine and $2827 in cash. The police obtained approval for the search warrant and thereafter seized various items from the defendant's apartment, including drug paraphernalia, three bags of powder cocaine totaling 451.1 grams, two bags of crack cocaine totaling 12 grams and $32,000 in cash.

The state filed a long form information charging the defendant with six counts of various drug related offenses. Thereafter, the defendant filed motions seeking to suppress the evidence seized incident to his arrest and to suppress the evidence seized from his apartment pursuant to the search warrant, claiming that both searches were illegal. He also requested the trial court to order the state to disclose the identity of the confidential informant relied upon in the affidavit in support of the search warrant and to allow him an evidentiary hearing pursuant to *Franks* v. *Delaware*, supra, 438 U.S. 154, to challenge the veracity of the allegations in the affidavit.

After hearing argument, the trial court rendered an oral decision denying the defendant's requests for the disclosure of the informant's identity and for the *Franks* hearing on the ground that the defendant had not met the legal threshold necessary to prevail on those requests. The trial court also made a preliminary ruling that the search warrant was supported by probable cause. After hearing testimony regarding the defendant's motion to suppress the evidence seized incident to his arrest, the trial court issued written memoranda of decision denying both that motion and the motion to suppress the evidence seized from the defendant's apartment pursuant to the search warrant. With respect to the evidence seized incident to the defendant's arrest, the court concluded that Setzer's conduct in walking up to the defendant's parked car and speaking to him

did not constitute a stop under the fourth amendment and, even if it did, the officers legally had detained the defendant for operating his car while his license was suspended. With respect to the evidence seized pursuant to the search warrant, the court concluded that the warrant was supported by probable cause under the totality of circumstances: the information from the confidential informant; the controlled buy of narcotics observed by the police; and the facts surrounding the defendant's arrest.

The state then filed a substitute information charging the defendant with two counts of possession of narcotics with intent to sell by a person who is not drug-dependent in violation of § 21a-278 (a), and one count of possession of narcotics with intent to sell in violation of § 21a-277 (a). The defendant entered a conditional plea of nolo contendere pursuant to General Statutes § 54-94a, reserving his right to appeal from the denial of the motions to suppress. The trial court, *Iannotti, J.*, rendered judgment of guilty in accordance with the plea and sentenced the defendant to a term of imprisonment of fourteen years. The defendant also entered a plea of nolo contendere to the charge of operating a motor vehicle while his license was suspended, and the court sentenced the defendant to an unconditional discharge for that conviction. This appeal followed.[5]

Two of the claims raised by the defendant on appeal challenge the trial court's decisions denying his motions to suppress evidence. Accordingly, "[a]s an initial matter, we note that [o]ur standard of review of a trial court's findings and conclusions in connection with a motion to suppress is well defined. A finding of fact will not be disturbed unless it is clearly erroneous in

[5] The defendant appealed from the judgment of the trial court to the Appellate Court, and, upon the defendant's motion, we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2.

view of the evidence and pleadings in the whole record
. . . . [When] the legal conclusions of the court are
challenged, [our review is plenary, and] we must deter-
mine whether they are legally and logically correct and
whether they find support in the facts set out in the
court's memorandum of decision . . . ." (Internal quo-
tation marks omitted.) *State* v. *Brown*, 279 Conn. 493,
514, 903 A.2d 169 (2006).

I

We begin with the defendant's claim that the trial
court improperly denied his motion to suppress the
evidence seized from his person in violation of his rights
under the fourth and fourteenth amendments to the
federal constitution and article first, §§ 7 and 9, of the
Connecticut constitution. The defendant contends that,
although he had pulled his car over without being
instructed to do so by the police, Setzer's approach to
his car constituted an investigatory detention under the
state and federal constitutions because a reasonable
person would have felt compelled to roll down his car
window when approached by a police officer and he
had a reasonable expectation of privacy when parked
in a residential area. He further contends that the police
had no reasonable and articulable suspicion of criminal
activity to justify approaching him in his car because,
contrary to the trial court's finding, the officers did not
know about the defendant's suspended driver's license
at the time of the investigatory detention. Finally, the
defendant asserts that the real reason for the detention
was racial profiling and, accordingly, urges this court
to adopt a heightened standard that would require the
police to show that they knew, as a matter of fact,
rather than suspected, that the defendant had been
operating his car while his license was under suspen-
sion. We conclude that, even if we were to assume,
arguendo, that Setzer's approach to the defendant's car
could constitute an investigatory detention that would

fall within the ambit of the fourth amendment to the federal constitution and article first, §§ 7 and 9, of the state constitution, the trial court properly denied the motion to suppress.[6]

Setzer offered the following testimony at the hearing on the motion to suppress the evidence seized at the time of the defendant's arrest. He had become familiar with the defendant before November 3, 2003, because, on several occasions in the two to three weeks preceding that date, he had conducted surveillance of the defendant as part of a police investigation. In the course of that investigation, Setzer had received information from the defendant's parole officer, that the defendant's driver's license had been suspended. Setzer confirmed that information with the department of motor vehicles. Setzer approached the defendant in his car on November 3 because of the suspended license. After the officers arrested the defendant, Setzer issued a summons to the defendant for operating his car while under a suspended license.

The defendant concedes that the officers' conduct cannot be viewed as a seizure that requires a showing of probable cause, but, rather, contends that it was an investigatory detention that implicates a lesser burden of proof that was not met. We disagree.

It is well settled that "a police officer may briefly detain an individual for investigative purposes if the

---

[6] We note that, although the defendant claims that the trial court's decisions denying both of his motions to suppress violated his rights under the state and federal constitutions, he generally does not claim that the state constitution affords any greater protection than the federal constitution. The lone exception is with respect to the standard for determining whether an investigatory detention had occurred but we have presumed, for purposes of this appeal, that an investigatory detention triggering constitutional safeguards did occur. Accordingly, we need not determine whether the state constitution affords greater protection in that one regard and limit our review with respect to the remaining issues to the federal constitution. See *State* v. *Gonzalez*, 278 Conn. 341, 347 n.9, 898 A.2d 149 (2006).

officer has a reasonable and articulable suspicion that the individual has committed or is about to commit a crime." (Internal quotation marks omitted.) *State* v. *Nash*, 278 Conn. 620, 632, 899 A.2d 1 (2006); accord *United States* v. *Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989); *United States* v. *Swindle*, 407 F.3d 562, 566 (2d Cir.), cert. denied, 546 U.S. 913, 126 S. Ct. 279, 163 L. Ed. 2d 247 (2005). "When a reasonable and articulable suspicion exists, the detaining officer may conduct an investigative stop of the suspect in order to confirm or dispel his suspicions." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 279 Conn. 517. This rule applies when the police reasonably suspect a traffic violation. See *United States* v. *Alcaraz-Arellano*, 441 F.3d 1252, 1257–58 (10th Cir. 2006) ("[a] traffic stop is permissible under the [f]ourth [a]mendment if the officer has a reasonable articulable suspicion that a traffic . . . violation has occurred or is occurring" [internal quotation marks omitted]); *Holeman* v. *New London*, 425 F.3d 184, 189 (2d Cir. 2005) ("[t]he [f]ourth [a]mendment requires that an officer making [a traffic] stop have probable cause or reasonable suspicion that the person stopped has committed a traffic violation or is otherwise engaged in or about to be engaged in criminal activity"); see also *Delaware* v. *Prouse*, 440 U.S. 648, 663, 99 S. Ct. 1391, 59 L. Ed. 2d 660 (1979) (disapproving of random detentions of automobile drivers to check driver's license and car registration, noting that such detentions would be permissible only if there was "articulable and reasonable suspicion that a motorist is unlicensed or that an automobile is not registered, or that either the vehicle or an occupant is otherwise subject to seizure for violation of law").

"In determining whether a detention is justified in a given case, a court must consider if, relying on the whole picture, the detaining officers had a particularized and

objective basis for suspecting the particular person stopped of criminal activity. When reviewing the legality of a stop, a court must examine the specific information available to the police officer at the time of the initial intrusion and any rational inferences to be derived therefrom." (Internal quotation marks omitted.) *State* v. *Brown*, supra, 279 Conn. 517; accord *State* v. *Nash*, supra, 278 Conn. 633.

In the present case, the trial court credited Setzer's testimony that he had been told by the defendant's parole officer, approximately two or three weeks before he spotted the defendant driving his car on November 3, 2003, that the defendant's license had been suspended. Setzer further testified that he thereafter had confirmed the status of the defendant's license with the department of motor vehicles, although he did not indicate precisely when he did so. These facts clearly were sufficient to establish a reasonable suspicion that the defendant was driving with a suspended license on November 3. Although the defendant contests the veracity of Setzer's testimony because he could not produce any corroborative evidence, such as contemporaneously written notes, it was for the trial court to determine whether Setzer was credible. See *State* v. *Azukas*, 278 Conn. 267, 277, 897 A.2d 554 (2006) (noting in review of court's ruling on motion to suppress that "[the] factual findings revolve principally around the credibility of the witnesses who appeared before the trial court, the evaluation of which is left to the trial court's sound discretion because of its function to weigh and interpret the evidence before it"). Nothing in the record contravenes Setzer's testimony. Moreover, although the defendant contends that Setzer should have verified the status of the license suspension on November 3, the reasonable and articulable suspicion standard demands no such proof. See *United States* v. *Martin*, 411 F.3d 998, 1001 (8th Cir. 2005) ("[t]he determinative question

is not whether [the defendant] actually violated the [m]otor [v]ehicle [c]ode . . . but whether an objectively reasonable police officer could have formed a reasonable suspicion that [the defendant] was committing a code violation"). Moreover, the information Setzer acted upon was not so stale as to render his suspicion unreasonable. Cf. *State* v. *Buddhu*, 264 Conn. 449, 466, 825 A.2d 48 (2003) ("fact that [the affiant] did not have personal contact with the defendant for approximately one month before the warrant was issued does not compel the conclusion that the information contained in the warrant affidavit was stale"), cert. denied, 541 U.S. 1030, 124 S. Ct. 2106, 158 L. Ed. 2d 712 (2004).

We similarly reject the defendant's claim that the police officers were required to use the least intrusive means to determine whether the defendant's license still was under suspension on November 3, 2003, which would have required that the police conduct a check through the department of motor vehicles at the scene. We are mindful that, "[t]o satisfy the reasonableness standard, officers conducting stops on less than probable cause must employ the least intrusive means reasonably available to effect their legitimate investigative purposes. . . . At the same time, however, the law recognizes the important need to allow authorities to graduate their responses to the demands of any particular situation." (Internal quotation marks omitted.) *State* v. *Nash*, supra, 278 Conn. 642. In the present case, it was minimally intrusive for Setzer to approach the defendant to inquire as to his license status, whereas a confirmation from the department of motor vehicles may have required that the officers continue surveillance of the defendant for a considerably longer period of time. See *State* v. *Anderson*, 24 Conn. App. 438, 443, 589 A.2d 372 (noting "minimally intrusive stop to determine if the operator's driving privileges had been suspended

. . . provided the least intrusive means of determining whether the scope of the investigation should be expanded"), cert. denied, 219 Conn. 903, 593 A.2d 130 (1991).

The defendant claims, however, that a heightened standard of proof should apply because the officers' conduct was based on racial profiling, not on information regarding the defendant's suspended license. The defendant concedes that he did not raise this claim before the trial court, but seeks to prevail under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). We need not discuss this claim at any length, however, because the record is entirely devoid of evidence of racial profiling. At best, the facts in the record and reasonable inferences therefrom establish that the defendant is African-American and Setzer knew the defendant's race before approaching him because of his previous surveillance of the defendant. Therefore, the defendant has failed to establish that a constitutional violation clearly occurred, as required under the third prong of *Golding*. See id., 240 (requiring that "alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial").

Accordingly, we conclude that the trial court properly determined that the state had met its burden of proving that the police had a reasonable and articulable suspicion to justify an investigatory detention. The defendant does not contest that, if his detention was lawful, the police had probable cause to search him incident to his arrest after Setzer smelled the marijuana and the defendant handed Setzer the marijuana cigarette. Therefore, the trial court properly denied the motion to suppress the evidence seized from the defendant's person.

II

The defendant next claims that, because he had made a preliminary showing that the affiants, officers Setzer

and Cizauskas, intentionally or recklessly had sworn falsely in support of the application for a search warrant of the defendant's apartment, the trial court improperly denied him an evidentiary hearing pursuant to *Franks* v. *Delaware*, supra, 438 U.S. 154. Should we disagree, the defendant claims, in the alternative, that we should adopt a less stringent standard of proof to trigger the right to such a hearing as a matter of state constitutional law. We conclude that the trial court reasonably denied the defendant a *Franks* hearing, and because we recently adopted the *Franks* standard as a matter of state constitutional law; see *State* v. *Glenn*, 251 Conn. 567, 578, 740 A.2d 856 (1999); in the absence of a compelling reason to revisit our holding in *Glenn*, we reject the defendant's alternative claim.[7]

"In *Franks* v. *Delaware*, supra, [438 U.S.] 155–56, the United States Supreme Court held that a defendant may challenge the truthfulness of an affidavit supporting a search warrant, provided the defendant has made a 'substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . .' If this statement is necessary to the finding of probable cause, 'the [f]ourth [a]mendment requires that a hearing be held at the defendant's request.' Id. The court stated also that '[t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for

[7] In connection with his claim that we should adopt a less stringent standard of proof to trigger the right to a *Franks* hearing as a matter of state constitutional law, the defendant also asserts that a lesser standard would have given him access to "documentary evidence" that a confidential informant existed. Because we decline to adopt a different standard, and the defendant's claim necessarily is predicated on his demonstrating that the affiants had lied about the existence of the confidential informant, a burden he did not meet for the reasons we set forth in this opinion, this claim also fails.

the truth, and those allegations must be accompanied by an offer of proof. . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. . . . The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant.' Id., 171." *State* v. *Ruscoe*, 212 Conn. 223, 232, 563 A.2d 267 (1989), cert. denied, 493 U.S. 1084, 110 S. Ct. 1144, 107 L. Ed. 2d 1049 (1990). "Whether the defendant is entitled to a hearing pursuant to *Franks* . . . is a mixed question of law and fact that [is reviewable] on appeal." *State* v. *Bergin*, 214 Conn. 657, 662 n.4, 574 A.2d 164 (1990).

The defendant claims that two material allegations contained in the warrant affidavit were called into question by Setzer's testimony. The first is the allegation in paragraph three of the affidavit attesting that the defendant had been observed leaving and reentering apartment five of 2 Craftwood Road on the day of the controlled buy between the defendant and the confidential police informant. That paragraph provides: "[D]uring the week of October 7, 2003 the affiants were contacted by the [confidential informant] mentioned in paragraph [two] of this affidavit. The [confidential informant] agreed to make a controlled buy of crack cocaine from [the defendant]. The [confidential informant] made arrangement[s] to meet the [the defendant] at a prearranged location in the city of Waterbury. A surveillance was setup at 2 Craftwood Road apartment [five]. A short time later [the defendant] was observed leaving apartment [five] and driving to the prearranged location and meeting with the [confidential informant]. The [confidential informant] was provided with Waterbury [p]olice funds and was kept under constant surveillance as the [confidential informant] met with [the defendant]. A short time later the [confidential informant] was observed leaving [the defendant] and

returning directly to the affiants and handed affiant Setzer a white rock substance similar in appearance to [c]ocaine. [The defendant] was observed returning to 2 Craftwood Road apartment [five] and going inside."

According to the defendant, Setzer's testimony at the probable cause hearing called the veracity of those allegations into question because his testimony "revealed that such close observation [of the defendant] had not been undertaken." The defendant further claims that, had those allegations been omitted from the affidavit, from the affiants' point of observation, there would have been no basis upon which to discriminate between his apartment, number five, and the other apartments nearby and the warrant therefore would have lacked probable cause. In support of this claim, the defendant relies on the following exchange at the probable cause hearing:

"[Defense Counsel]: Had you ever conducted any surveillance on this particular apartment, 2 Craftwood [Road], [apartment five]?

"[Setzer]: I had an idea that [the defendant] was coming from that building [but] I was unsure of which apartment it was, but, yes, surveillance had been conducted on that building in that parking lot.

"[Defense Counsel]: But you're not sure whether— let me ask you this, did you ever see [the defendant] coming in other than this occasion, did you ever see him going in and out of this particular apartment number?

"[Setzer]: No, I didn't.

"[Assistant State's Attorney]: Objection, Your Honor, beyond the scope of the direct examination.

"[Defense Counsel]: That's withdrawn, Your Honor, the question as answered."

We agree with the state that, "[a]t best, this ambiguous testimony suggests only that Setzer himself never observed the defendant exit or reenter apartment [five]. This testimony shed no light on the truth or falsity of the allegation that the defendant was so observed because the affidavit did not attribute these observations to Setzer personally and Setzer never testified that no one [had] made them." In making his claim, the defendant ignores the well settled principle that, in testing the amount of evidence that supports probable cause, it is not the personal knowledge of the arresting officer, but the collective knowledge of the law enforcement organization at the time of the arrest that must be considered. See *Poulos* v. *Pfizer, Inc.*, 244 Conn. 598, 619, 711 A.2d 688 (1998) (*McDonald, J.*, concurring) ("Fourth amendment law recognizes that the collective knowledge of the police determines probable cause. See *Whiteley* v. *Warden*, 401 U.S. 560, 568, 91 S. Ct. 1031, 28 L. Ed. 2d 306 [1971]; see 2 W. LaFave, Search and Seizure [3d Ed. 1996] § 3.5 [b], p. 259 n.46."); *State* v. *Acquin*, 187 Conn. 647, 657, 448 A.2d 163 (1982) ("when we test the quantum of [evidence supporting] probable cause, it is not the personal knowledge of the arresting officer but the collective knowledge of the law enforcement organization at the time of the arrest which must be considered"), cert. denied, 463 U.S. 1229, 103 S. Ct. 3570, 77 L. Ed. 2d 1411 (1983), overruled in part on other grounds by *Davis* v. *United States*, 512 U.S. 452, 459, 114 S. Ct. 2350, 129 L. Ed. 2d 362 (1994). Therefore, the allegations in the affidavit represent the collective knowledge of Setzer, his coaffiant, Cizauskas, and any other police officers who may have participated in surveillance of the controlled buy. Accordingly, it was reasonable for the trial court to conclude that the defendant had failed to make a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit.

The defendant also claims that the allegation in paragraph three of the affidavit, that the alleged buy was "controlled," was false because a "controlled" buy occurs only when the police have searched the informant in advance of the buy. We agree that it appears from the affiants' description of the events in paragraph three that the informant in fact had not been searched prior to being sent in to the apartment to make the buy, given the omission of any reference to a search in the affidavit and the typicality of such a practice in executing a controlled buy. Nonetheless, an imperfection in the execution of the transaction does not transform the allegation to a falsehood. Accordingly, the trial court also properly determined that the defendant had failed to make a substantial preliminary showing that a false statement knowingly, intentionally or recklessly had been made in connection with that allegation.[8]

## III

Finally, we turn to the defendant's claim that the trial court should have suppressed the fruits of the search of his apartment incident to the search warrant. The defendant claims that the warrant was facially invalid and was not supported by probable cause. We disagree.

"The standards for upholding a search warrant are well established. We uphold 'the validity of [the] war-

---

[8] Finally, the defendant attempts to discredit generally the remaining parts of the record by contending that Setzer's testimony during a hearing on one of the suppression motions further demonstrated Setzer's general lack of veracity. In specific, the defendant claims that Setzer testified that "no notes had been taken during the on-going investigation and that no documentation of any kind existed to prove that there had been any on-going investigation," which, according to the defendant, was sufficient to "cause the entire warrant to fail for lack of probable cause." As the state maintains, and we agree, the record does not support the factual predicate to the defendant's claim. Setzer testified that the investigating officers had not taken any *contemporaneous* notes, *not* that their investigative efforts were undocumented. Indeed, Setzer expressly pointed to a police report to show that there had been an investigation prior to the defendant's arrest.

rant . . . [if] the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed.' . . . *State* v. *Duntz*, 223 Conn. 207, 215, 613 A.2d 224 (1992). '[T]he magistrate is entitled to draw reasonable inferences from the facts presented. When a magistrate has determined that the warrant affidavit presents sufficient objective indicia of reliability to justify a search and has issued a warrant, a court reviewing that warrant at a subsequent suppression hearing should defer to the reasonable inferences drawn by the magistrate. Where the circumstances for finding probable cause are detailed, where a substantial basis for crediting the source of information is apparent, and when a magistrate has in fact found probable cause, the reviewing court should not invalidate the warrant by application of rigid analytical categories.' *State* v. *Barton*, 219 Conn. 529, 544–45, 594 A.2d 917 (1991). We are also reminded that '[i]n a doubtful or marginal case . . . our constitutional preference for a judicial determination of probable cause leads us to afford deference to the magistrate's determination.' *State* v. *Johnson*, 219 Conn. 557, 565, 594 A.2d 933 (1991); see also *State* v. *DeFusco*, 224 Conn. 627, 642, 620 A.2d 746 (1993). Lastly, it is well established that, in reviewing a search warrant affidavit, '[t]he reviewing court may consider only the information that was actually before the issuing judge at the time he or she signed the warrant.' . . . *State* v. *Shifflett*, 199 Conn. 718, 746, 508 A.2d 748 (1986). In the absence of a showing that the information contained in the warrant is false or misleading or that there is a material omission from the affidavit; see *Franks* v. *Delaware*, [supra, 438 U.S. 154]; a hearing on a motion to suppress is limited to a review of the four corners of the affidavit. *State* v. *Diaz*, 226 Conn. 514, 543–44 n.16, 628 A.2d 567 (1993)." *State* v. *Rosario*, 238 Conn. 380, 385–86, 680 A.2d 237 (1996).

"Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to

be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred." (Internal quotation marks omitted.) *State* v. *Buddhu*, supra, 264 Conn. 460. "[I]t is axiomatic that [a] significantly lower quant[um] of proof is required to establish probable cause [rather] than guilt. . . . *State* v. *Bova*, 240 Conn. 210, 232, 690 A.2d 1370 (1997). [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens' . . . demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts. . . . *Illinois* v. *Gates*, 462 U.S. 213, 243–44 n.13, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)." (Internal quotation marks omitted.) *State* v. *Buddhu*, supra, 462–63.

"Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. See, e.g., *State* v. *Bergin*, [supra, 214 Conn. 661–62]. The trial court's determination on the issue, therefore, is subject to plenary review on appeal." *State* v. *Clark*, 255 Conn. 268, 279, 764 A.2d 1251 (2001). Because this issue "implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's

decision was supported by substantial evidence." (Internal quotation marks omitted.) Id., 280.

Turning to the four corners of the affidavit, we note that the facts attested to therein by the affiants, Setzer and Cizauskas, fall into essentially three categories: (1) information obtained through or in connection with the confidential informant; (2) facts pertaining to the defendant's arrest; and (3) information about the defendant independently obtained by the affiants. The affidavit reflects the following allegations relating to the informant. In October, 2003, the affiants received information from a "[c]onfidential [r]eliable [i]nformant" that the defendant was selling crack cocaine from his apartment. The informant described the defendant as a black male who lived at 2 Craftwood Road, apartment five, and drove a black Chevrolet Tahoe with Maryland license plates. The affiants confirmed the defendant's address through what is now known as the board of pardons and paroles.

During the week of October 17, 2003, the informant contacted the affiants, at which time the informant agreed to make a controlled buy of crack cocaine from the defendant. The informant made arrangements to meet the defendant at a prearranged location in Waterbury. Surveillance was set up at 2 Craftwood Road, apartment five. A short time later, the defendant was observed leaving that apartment, driving to the prearranged location and meeting with the informant. The informant was kept under constant surveillance during this meeting. Soon thereafter, the informant left the defendant and returned to the affiants, handing them a white rock substance that later tested positive for the presence of cocaine. The defendant was observed returning to and reentering his apartment.

On November 3, 2003, the day of the defendant's arrest, the informant contacted the affiants and told

them that he or she had been inside the defendant's apartment within the last three days and had observed the defendant in possession of a large quantity of crack cocaine, packaged for sale. The informant knew what crack cocaine looked like from past personal use of the substance.

The affidavit also attested to the facts relating to the defendant's arrest on November 3, 2003, which included: (1) Setzer had observed the defendant driving a black Chevrolet Tahoe with Maryland license plates in an area that was a short distance from 2 Craftwood Road; (2) the defendant had in his possession a white rock substance, which Setzer knew from his training and experience to be consistent with crack cocaine, and $2827 in cash; and (3) the defendant had confirmed his address as 2 Craftwood Road, apartment five. Finally, the affiants attested to the fact that a state police records check revealed that the defendant previously had been convicted of narcotics violations and currently was on parole.

The trial court concluded that, under the totality of circumstances, the warrant was supported by probable cause. The court reasoned that: (1) the majority of the informant's knowledge was firsthand; (2) the informant had provided detailed information regarding the defendant's name, address and make of car; (3) there was a controlled buy that was observed firsthand by police; (4) the informant was reliable because, although the informant's track record was not lengthy, the police had confirmed details provided by the informant; and (5) the officers' training and experience in this case allowed them to conclude that narcotics would be in the defendant's apartment. We agree with the trial court that, when viewed under the totality of circumstances, the warrant was supported by probable cause.

We note that the informant provided details to the police that suggested that the informant knew the defen-

dant. The informant was not an anonymous tipster, but a person with whom the police had met face-to-face. This type of contact renders the informant more reliable because the police can observe the informant's demeanor to determine his or her credibility, and the informant "runs the greater risk that he may be held accountable if his information proves false."[9] (Internal quotation marks omitted.) *United States* v. *Canfield*, 212 F.3d 713, 719 (2d Cir. 2000); see also *State* v. *Hammond*, 257 Conn. 610, 622, 778 A.2d 108 (2001) (face-to-face conversations with informants are more credible and reliable because "the officer . . . has the opportunity to assess the informant's credibility and demeanor"). Given the extensive narcotics enforcement experience of Setzer and Cizauskas, as attested to in the affidavit, due weight should be given to their capability of assessing the credibility of the informant and the reliability of the informant's statements. See *State* v. *Tuck*, 90 Conn. App. 872, 878–79, 879 A.2d 553 (2005).

We also are mindful that "[s]tatements made by an informant are entitled to greater weight if corroborated by evidence independently gathered by the police." (Internal quotation marks omitted.) *State* v. *Mordowanec*, 259 Conn. 94, 110, 788 A.2d 48, cert. denied, 536 U.S. 910, 122 S. Ct. 2369, 153 L. Ed. 2d 189 (2002). The affiants in the present case independently corroborated

---

[9] We agree with the defendant, however, that the conclusory label of "confidential reliable informant" attached by the affiants is not entitled to any weight unless supported by facts in support thereof. See *Phaneuf* v. *Fraikin*, 448 F.3d 591, 598 (2d Cir. 2006) ("[a]s a general rule, we are wary of vague or conclusory statements about an informant's reliability"). We disagree, however, that the informant lacked reliability simply because he or she had no established track record with the police. See *United States* v. *Canfield*, 212 F.3d 713, 719 (2d Cir. 2000) ("[I]t is improper to discount an informant's information simply because he has no proven record of truthfulness or accuracy. . . . [The informant's] veracity can be shown in other ways." [Citations omitted; internal quotation marks omitted.]).

the informant's statements. The police confirmed the details of the defendant's address and the make of car he drove. The police observed the defendant meet with the informant at a prearranged location, which corroborated that a prior relationship existed between the defendant and the informant that provided the basis for the informant's knowledge. This corroboration in turn bolstered the informant's claim that he or she had been in the defendant's apartment, where the informant observed the large quantities of crack cocaine packaged for sale. The police search of the defendant incident to his arrest yielding more than one and one-half grams of crack cocaine and an unusually large sum of cash, $2827, corroborated the informant's statement that the defendant was selling crack cocaine.

The affiants also knew, from a criminal records check, that the defendant had a prior record for narcotics offenses. "A suspect's prior criminal record, even if inadmissible at trial, may be the basis for establishing probable cause." Id., 111. The fact that the affidavit does not indicate whether these convictions were for selling drugs, as opposed to possession of drugs, does not invalidate entirely the probity of this evidence, as the defendant appears to claim.

Finally, we turn to the controlled buy. As the defendant properly points out, there was a deficiency in the manner in which the controlled buy was conducted that bears on its reliability. As we have noted previously, the affiants did not attest that the informant had been searched to ensure that he or she was not in possession of any narcotics before meeting with the defendant, as is standard practice. See, e.g., *State* v. *Johnson*, supra, 219 Conn. 561; *State* v. *Davis*, 84 Conn. App. 505, 512, 854 A.2d 67, cert. denied, 271 Conn. 922, 859 A.2d 581 (2004); *State* v. *Greene*, 81 Conn. App. 492, 495, 839 A.2d 1284, cert. denied, 268 Conn. 923, 848 A.2d 472 (2004); *State* v. *Lucas*, 63 Conn. App. 263, 268 n.5, 775

A.2d 338, cert. denied, 256 Conn. 930, 776 A.2d 1148 (2001). Thus, this omission left open the possibility that the crack cocaine provided by the informant to the affiants after meeting with the defendant already was in the informant's possession before the informant had met with the defendant.

Had the controlled buy been the sole basis for the warrant in the present case, it is questionable whether probable cause would have existed. The test, however, is the totality of circumstances. See *State* v. *Barton*, supra, 219 Conn. 544 ("[i]f the warrant affidavit fails to state in specific terms how the informant gained his knowledge or why the police believe the information to be trustworthy, however, the magistrate can also consider all the circumstances set forth in the affidavit to determine whether, despite these deficiencies, other objective indicia of reliability reasonably establish that probable cause to search exists"). Given the totality of the circumstances, as we previously have set forth, including the defendant's conduct in connection with the controlled buy—his meeting at the prearranged location with a self-confessed crack cocaine user and his leaving from and returning to his apartment immediately before and after that meeting—provided probable cause for the search of the defendant's apartment. Accordingly, the trial court properly denied the defendant's motion to suppress the evidence seized from his apartment pursuant to the warrant.

The judgment is affirmed.

In this opinion the other justices concurred.