******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., with whom ESPINOSA and ROBINSON, Js., join, dissenting. Allowing government agents to intrude into an individual's home on the basis of the information contained in the affidavit at issue in the present case significantly lowers the bar in our probable cause jurisprudence. To my knowledge, this court has never upheld the issuance of a search warrant using such insubstantial information to establish the reliability of the information given by an informant.[1] The search warrant for the apartment where the defendant, Teudi Flores, resided, was issued on an affidavit containing information from an untested informant, given while he was under arrest for other crimes, and which lacked *any* independent corroboration by the police. That the informant's statement to the police may have implicated him in a minor criminal offense has never been deemed sufficient to establish probable cause to search in this state. Perhaps in an appropriate case a statement against penal interest standing alone may be enough to justify issuing a search warrant, but the statement at issue in the present case fell short of that required to issue a search warrant. The informant's statement did not expose him to any meaningful danger of criminal liability. It was highly unlikely that the informant would have been prosecuted for the minor criminal offense for which he implicated himself, and there was little chance that the informant would have been prosecuted for filing a false report if a search of the apartment did not turn up any contraband because his statement lacked meaningful detail that the police could later prove false. In addition, the information the informant provided lacked the specificity that might lead one to believe that he actually observed what he claims to have seen, and the police did exactly nothing to confirm his knowledge. Because I believe that the information in the affidavit fell short of that necessary to establish probable cause rather than a mere suspicion of criminal activity, I respectfully dissent.

I

The majority's decision in the present case rests entirely on the fact that the informant, who was apparently previously unknown to the police, provided certain information while he was in custody at the police station following his arrest for various motor vehicle charges. The information he provided to the police about the defendant's possible drug activity also implicated the informant in a rather minor criminal offense related to that activity.[2] When an affidavit in support of a request for a search warrant is based on information from an informant, the affidavit must contain enough facts to support a conclusion that the informant is credible and his information is reliable. *State* v. *Barton*, 219

Conn. 529, 544–45, 594 A.2d 917 (1991). Although we look at the totality of the circumstances presented in the affidavit; id.; three factors are particularly relevant to a court's analysis of the facts in the affidavit: "(1) corroboration of the information by police, (2) declarations against penal interest by the informant-declarant, and (3) the reputation and past criminal behavior of the suspect." *State* v. *Ferguson*, 185 Conn. 104, 113, 440 A.2d 841 (1981). The affidavit in the present case did not contain any information relating to the first and third factors, and, thus, the majority rests its conclusion principally on the notion that the informant spoke to the police face-to-face and provided information that could subject him to criminal liability.

We have not previously been presented with a case asking us to uphold the issuance of a search warrant on the sole basis of an uncorroborated statement against penal interest from an untested informant. In fact, we have indicated that such information, without more, would *not* be enough to establish an informant's reliability. See id., 115 ("We have held that statements against penal interest may be a substantial basis for crediting an informant's tip . . . . Again, while this factor, in itself, may not be sufficient to credit an informant's information, it is another indicia of the reliability of the information provided by the informant in this case and contributes to a finding of probable cause." [Citation omitted.]).

In our prior cases involving a statement against one's penal interest, the affidavit at issue also provided other information that independently corroborated the informant's statements and truly exposed the informant to criminal liability. For example, the majority cites our decision in *State* v. *Barton*, supra, 219 Conn. 529. In that case, however, the informant provided significant additional details, which were more likely to expose him to prosecution for filing a false report if his claims were untrue, and the informant also provided a sample of the marijuana he claimed to have purchased to corroborate his assertions, which further subjected him to potential criminal liability. Id., 549–50. The informant in *Barton* went to police headquarters and personally reported to a police officer that the defendant in that case, Timothy Barton, was keeping a large quantity of marijuana in trash bags in a closet at Barton's apartment. Id., 547. The informant gave the name of the defendant, explained that the defendant drove a vehicle registered in Texas, stated that the defendant had recently been away for approximately one week, and gave the date of the defendant's return. Id. The informant explained that when Barton returned, Barton unloaded several trash bags filled with marijuana from his vehicle during the evening hours and placed them in his apartment. Id. The informant also told the police that shortly after the marijuana was unloaded, four or five people went to Barton's apartment, stayed a short

while, and then left with plastic garbage bags. Id. Significantly, the informant also *gave to the police a sample of the marijuana that was in the bags*, and the sample field-tested positive for marijuana. Id. We upheld the issuance of a search warrant for the defendant's apartment, relying heavily on the fact that the informant had not only made a statement against interest, but had also provided what he stated was a sample of the marijuana being kept by the defendant. Id., 551–53. We concluded that the informant's provision of a sample provided substantial corroboration of the information given by the informant and subjected the informant to possible criminal sanctions. Id., 551.

Other similar cases also relied on circumstances in addition to an informant's statement against penal interest to justify a search. In *State* v. *Johnson*, 286 Conn. 427, 430, 944 A.2d 297, cert. denied, 555 U.S. 883, 129 S. Ct. 236, 172 L. Ed. 2d 144 (2008), an individual arrested by the police for various narcotics offenses informed the police of the name of a person from whom he previously had purchased narcotics. The police verified the information given by the informant by having the informant set up a controlled purchase of narcotics and then witnessing the controlled purchase between the informant and a person matching the description of the person who the informant claimed was a narcotics dealer. Id., 431–32. Similarly, in *State* v. *Batts*, 281 Conn. 682, 704–705, 916 A.2d 788, cert. denied, 552 U.S. 1048, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007), the police verified information provided by an informant in a face-to-face meeting with the police, by observing a controlled purchase of narcotics between the informant and the defendant. In *State* v. *Ferguson*, supra, 185 Conn. 113–16, we upheld the issuance of a search warrant when the affidavit explained that the police who interviewed the informant were aware of facts that supported the informant's claims, were aware also that the person named by the informant as a drug dealer had previously been arrested for similar drug crimes, and the informant had made a statement against his penal interest.

The United States Supreme Court also has never sanctioned the issuance of a warrant based solely on an informant's in-person statement against penal interest. In *United States* v. *Harris*, 403 U.S. 573, 583–85, 91 S. Ct. 2075, 29 L. Ed. 2d 723 (1971), a four justice plurality would have concluded that an incriminating statement alone was enough to find probable cause, but they could not get a fifth vote to make that conclusion a majority. In that case, the affidavit at issue also included, in addition to the informant's incriminating statements, facts that were previously known to police and that independently corroborated the informant's assertions. Id., 579–80.

There are good reasons why a court should be hesi-

tant to rely on an uncorroborated statement against penal interest when issuing a warrant. Standing alone, these statements carry few indicia of reliability. The common justification for relying on statements against interest as a basis for issuing a warrant is the notion that someone is unlikely to implicate himself in criminal activity unless the information is true. See, e.g., id., 583. This assumption is dubious, however, because a rational person typically would not reveal information that could harm him unless he expected to benefit in some way. See M. Bowman, "Truth or Consequences: Self-Incriminating Statements and Informant Veracity," 40 N.M. L. Rev. 225, 236–41 (2010). Courts considering whether to issue a warrant should be confident that the informant is not merely repeating street rumors or fabricating a story in the hope of obtaining a deal from the authorities. Moreover, the assumption that a statement against interest is likely to be reliable holds true only if the informant actually believes that he is likely to be prosecuted both for the crime he admits to and for filing a false report if his information turns out to be untrue. Moreover, the danger that an informant is relying on rumor or speculation rather than personal knowledge is heightened when the crime he implicates himself in is minor and stands little chance of actually being prosecuted; see 2 W. LaFave, Search and Seizure (5th Ed. 2012) § 3.3 (c), p. 177 ("[t]he fundamental question is whether the informant would have perceived his remarks as highly incriminating"); and when there is little chance that an informant would be prosecuted if his information turns out to be false. Id., p. 184 (statement against penal interest "would not be persuasive absent a showing that the informant was aware that [an offense for making a false report] existed and that there was a real risk of prosecution should his information prove false").

In light of these concerns, we should take this opportunity to make clear that although a statement against interest might justify issuing a warrant in appropriate cases, courts cannot consider these statements in a "highly legalistic"; id., p. 177; or "blunderbuss fashion." Id., p. 162. Instead, a court must carefully scrutinize all of the circumstances revealed by the affidavit to ensure the information given by the informant is a true statement against interest and bears sufficient indicia of reliability. Factors for the court to consider include the informant's reasonable expectations about the likelihood of serious criminal liability, both as a result of the admission and in the event the information is found to be false, and the informant's possible incentives for making the admissions to the police. Courts should also consider whether the statement contains sufficient detail to indicate its probable truth, as did the statement in *State* v. *Barton*, supra, 219 Conn. 549–50, and can also consider observations by the police concerning the informant's attitude, candor, and demeanor while giving

the statement. Only when the information provided by the informant represents a true statement against interest, sufficiently detailed to be worthy of credit, should a court issue a warrant on that basis alone. Although not exhaustive, these factors highlight the type of information that the police should include in their affidavits, and that courts should demand when issuing warrants, to give meaningful effect to the fourth amendment's promise of protection against unreasonable searches.

II

Applying these considerations to the present case, I am persuaded that the facts contained in the affidavit fell short of justifying issuing a search warrant for a number of reasons.

First, the crime the informant implicated himself in was not a serious offense and there was almost no chance of the informant being prosecuted based on his statements. To be considered a statement against interest, the information in the affidavit must show that a reasonable person would perceive his statements to be highly incriminating. See 2 W. LaFave, supra, § 3.3 (c), p. 177. The offense that the informant admitted to—possession of a personal use quantity of marijuana on a number of occasions—is hardly a serious offense and the informant likely did not expect that his statements would lead to him being charged with additional crimes. The affidavit does not state whether the police told the informant that he was likely to be charged with possession of marijuana based on his information, nor does it state whether the police actually charged him with that offense after taking his statement. Unlike the informant in *State* v. *Barton*, supra, 219 Conn. 551, the informant in the present case did not provide any marijuana to the police at the time he gave his statement. And, although the police may prosecute other, more serious crimes based on a person's confession alone, the state has not provided examples showing that it tends to charge offenders with low-level drug possession offenses based solely on the offender's own word and without any physical evidence. Even if the state were likely to prosecute this charge, the informant faced almost no likelihood of receiving any criminal penalty. This state has long ceased incarceration for minor marijuana possession offenses, preferring instead to use pretrial diversionary programs. Indeed, possession of a small amount of marijuana is no longer a criminal offense. See footnote 2 of this dissenting opinion.

Second, there was no serious risk of negative consequences to the informant if his information turned out to be false. Although it is an offense to file a false report with the police; General Statutes § 53a-180c; it would be difficult for the state to sustain such a charge in the present case. The facts relayed by the informant were so vague and void of meaningful detail that a reasonable

person in the informant's position could not expect to be prosecuted if a search of the defendant's apartment did not substantiate the informant's report. Had the police not found any marijuana at the apartment, its absence could easily have been attributed to the passage of the unspecified time since he allegedly purchased and saw narcotics there. For the state to convict the informant for filing a false report, it would have to prove beyond a reasonable doubt that there was no marijuana in the apartment at the times the informant claimed to have purchased it there, something that would be quite difficult, if not impossible, to prove.

Third, the information given by the informant lacked meaningful detail. Detail from an informant can be an important factor in finding probable cause. Absent specific information tending to show that the informant has personal knowledge of the information he relays, it is difficult to ensure that the informant is speaking from personal experience rather than repeating street rumors. As Professor LaFave has explained: "[I]f the police apprehended a person for possession of drugs and he were then to admit to purchases from various named sources in the recent past, there would be cause for skepticism. Such a generalized and unfocused set of allegations might well be nothing more than a series of falsehoods involving the names of several persons he has heard it rumored use or sell narcotics, for he could well anticipate that if the police act upon the information they will likely discover narcotics at some of the identified premises." (Footnote omitted.) 2 W. LaFave, supra, § 3.3 (c), pp. 171–73. Moreover, additional detail from an informant increases the likelihood that an informant could be prosecuted if his information turns out to be false. The informant in the present case provided an address of the defendant's apartment and a vague description of his dealer, but provided no additional information of a kind that tended to show that the informant actually had visited the apartment and purchased marijuana there. He gave no description of its exterior appearance, no indication that he ever entered the apartment, and no indication about whether he knew where the marijuana was being stored in the apartment. The police interviewing the informant could have asked follow-up questions to elicit this information and lessen the likelihood that the informant was merely repeating rumors; if they did, the answers do not appear in the affidavit.

Finally, the affiant neither opined that the informant was credible nor gave any facts as to why he determined the informant appeared to be credible. Although the police officer's opinion about an informant's credibility is but one relevant item that a judge can consider; see *State* v. *Batts*, supra, 281 Conn. 704; the police submitting the affidavit in the present case gave no such opinion. Instead, the police were silent about their assessment, if any, of the informant's credibility. More-

over, an officer's opinion, without a supporting factual basis, carries little weight. Ultimately, it is the judge who must make the independent determination of whether the informant is credible and his story reliable. *State* v. *Jackson*, 162 Conn. 440, 444, 294 A.2d 517, cert. denied, 409 U.S. 870, 93 S. Ct. 198, 34 L. Ed. 2d 121 (1972) ("the fourth amendment requires that an affidavit in support of a warrant contain enough information to support a magistrate's own judgment"). This requires the affiant to provide facts that would allow the judge to draw his own conclusions about the informant's credibility and reliability. Id., 444–45 (if judge is not informed of underlying circumstances leading to officer's conclusion, "the inferences from the facts which lead to the complaint will be drawn not by a neutral and detached magistrate, as the [United States] [c]onstitution requires, but instead by a police officer" [internal quotation marks omitted]). No such facts were given in the present case.

### III

I recognize that we accord deference to the issuing judge, but based on the information in the affidavit, I disagree that the informant gave a true statement against interest, one that provides a substantial basis for crediting it. Given the paucity of relevant information contained in the affidavit and the lack of any corroboration of the statements given by the informant, I disagree that the information sufficiently goes beyond the realm of suspicions and rumors to establish probabilities. The police could have done a number of things to lend credibility to the informant's statements. They could have asked additional questions to elicit more detail about this statement, the kind of detail that might indicate that the informant actually had personal knowledge of what he relayed to police and was not merely repeating rumors. The police could have verified his information and descriptions by conducting surveillance of the apartment. See, e.g., *State* v. *Batts*, supra, 281 Conn. 705 (noting that "[t]he police confirmed the details of the defendant's address and the make of car he drove"). They could have watched the apartment, even for a brief time, to verify that it received the frequent visitors as claimed by the informant. See id. The police also could have set up a controlled buy, a frequent police tactic used to verify an informant's claims. See, e.g., *State* v. *Johnson*, supra, 286 Conn. 431–32; *State* v. *Batts*, supra, 702. The police did none of this.

For the reasons given, I would conclude that the issuance of the search warrant was not justifiable under our law. Furthermore, for substantially the reasons given by the defendant in his brief, I believe the unreasonable search of the apartment tainted his subsequent confession. Consequently, I would reverse the judgment of the Appellate Court and remand the case to that court with direction to reverse the judgments of the

trial court and to remand the case to the trial court with direction to grant the defendant's motion to suppress.

[1] The substantive paragraphs of the affidavit provide, in their entirety, as follows: "[The informant] stated among other things that he regularly purchases marijuana, approximately every [three] days, from 215 Camp Street, third floor apartment. He stated [that] he has been making such purchases, for the last month or two. [The informant] stated he purchases [one] or [two] bags of marijuana each time, from a male subject he only knew as 'John.' He stated he pays 'John' $10 for each bag of marijuana. [The informant] stated [that] 'John' has long hair, and many people frequent the apartment. . . .

"Each of the estimated [twenty] purchases [the informant] made from 215 Camp Street, third floor apartment, all came from within that apartment, within the last two months. [The informant] stated [that] the last time he purchased marijuana [from the apartment] was [four] days prior to the date of the statement he made to [the affiant]. [The informant's] last purchase was made on Saturday, January 23, 2010."

[2] The informant's statement implicated him in conduct that is no longer a criminal offense, but is classified as an infraction under General Statutes §§ 21a-267 (d) and 21a-279a.