******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# STATE OF CONNECTICUT *v.* GEORGE SILER
## (AC 43351)

Elgo, Suarez and DiPentima, Js.

*Syllabus*

The defendant, who had been convicted, on a conditional plea of nolo contendere, of the crimes of possession of narcotics with intent to sell and criminal possession of a firearm, appealed to this court, claiming that the trial court improperly denied his motion to suppress certain evidence that was seized from his residence by the police. Relying on information from a confidential informant, the police executed a search and seizure warrant at the defendant's residence, where they recovered drugs, firearms and other contraband. The police affidavit that accompanied the warrant application had described two controlled purchases of heroin and stated that the police surveilled the defendant's residence while the confidential informant contacted the defendant and arranged to meet him at a specific location to complete the transaction. The confidential informant had given the police a description of the defendant, whom he knew as G, and the car that he drove as well as G's telephone number and the location of his residence. The police thereafter identified the defendant as the person described by the confidential informant through a check of law enforcement databases and the Office of Adult Probation after the police learned that he was on probation in connection with a prior robbery. Prior to the controlled drug purchases, the police also conducted surveillance at the defendant's residence, where they saw a male who matched the description provided by the confidential informant enter the same type of vehicle that had been described by the confidential informant. Thereafter, when shown an unmarked photograph of the defendant by the police, the confidential informant immediately identified the individual in the photograph as G. On appeal, the defendant urged this court to overrule our Supreme Court's decision in *State* v. *Barton* (219 Conn. 529), in which the court adopted a totality of the circumstances analysis for the determination of probable cause under article first, § 7, of the Connecticut constitution and rejected the rigid analytical standards previously required by *State* v. *Kimbro* (197 Conn. 219). The defendant further claimed that the police affidavit in support of the application for a search warrant did not establish probable cause because it lacked the necessary nexus between his residence and the criminal activity alleged in the warrant application. *Held*:

1. This court declined the defendant's invitation to overrule our Supreme Court's decision in *Barton* to adopt a totality of the circumstances analysis for the determination of probable cause under article first, § 7; this court, as an intermediate appellate tribunal, was not at liberty to modify, reconsider or overrule the precedent of our Supreme Court, a bedrock precept that the defendant misconstrued in arguing that this court nonetheless could conduct its own thoughtful review of *Kimbro* and *Barton,* and, apart from that fundamental deficiency, the defendant provided no federal or state precedent to support his contention that the test adopted in *Barton* should be overruled, and his failure to provide an independent state constitutional analysis in accordance with *State* v. *Geisler* (222 Conn. 672) rendered his claim with respect to the state constitution abandoned.

2. The trial court properly denied the defendant's motion to suppress, as the police warrant application contained sufficient information from which a judge reasonably could conclude that there was a fair probability that contraband or evidence of a crime would be found in the defendant's residence: the affidavit contained a detailed description of the alleged heroin dealer that matched the defendant's physical attributes, shared his home address and indicated that the heroin dealer drove the same type of vehicle as did the defendant, the affidavit indicated that the confidential informant positively identified the defendant immediately from a photograph he was shown of the alleged heroin dealer, and surveillance conducted at the defendant's residence confirmed that he

and the vehicle at issue were at the residence prior to and after the controlled drug purchases; moreover, although the trial court acknowledged that the affidavit did not identify with any specificity the time period of the first controlled drug purchase, the court made a practical, commonsense decision in concluding that the affidavit's phrase, "prior to the buy taking place," could have been found by the court that issued the warrant to be a period of time in very close approximation to the arrangements made for the first controlled buy, and the affidavit's statement that surveillance showed that the defendant had arrived at his home just prior to the second buy permitted the inference that narcotics were stored at the residence.

Argued January 13—officially released April 27, 2021

*Procedural History*

Substitute information charging the defendant with two counts of the crime of criminal possession of a firearm, and with one count each of the crimes of possession of narcotics with intent to sell by a person who is not drug-dependent and possession of narcotics with intent to sell within 1500 feet of a day care center, brought to the Superior Court in the judicial district of Fairfield, where the court, *Russo, J.*, denied the defendant's motion to suppress certain evidence; thereafter, the state filed a substitute information charging the defendant with two counts of the crime of criminal possession of a firearm and with the crime of possession of narcotics with intent to sell; subsequently, the defendant was presented to the court, *Devlin, J.*, on a conditional plea of nolo contendere to the charges of criminal possession of a firearm and possession of narcotics with intent to sell; thereafter, the court, *Alexander, J.*, rendered judgment of guilty, from which the defendant appealed to this court. *Affirmed.*

*W. Theodore Koch III*, assigned counsel, for the appellant (defendant).

*C. Robert Satti*, supervisory assistant state's attorney, with whom were *Joseph T. Corradino*, state's attorney, and, on the brief, *John C. Smriga*, former state's attorney, for the appellee (state).

*Opinion*

ELGO, J. The defendant, George Siler, appeals from the judgment of conviction rendered following a conditional plea of nolo contendere to two counts of criminal possession of a firearm in violation of General Statutes § 53a-217 (a), and to violating the state dependency producing drug laws; see General Statutes § 21a-277 (a); for possession of narcotics with intent to sell. On appeal, the defendant claims that the trial court improperly denied his motion to suppress certain evidence seized from his residence. We affirm the judgment of the trial court.

On December 12, 2017, members of the Stratford Police Department conducted a search of the residential property known as 943 Success Avenue in Stratford (residence) pursuant to a search and seizure warrant signed by a judge of the Superior Court. They recovered, inter alia, 84.7 grams of suspected heroin, 5.8 grams of suspected marijuana, 188 wax paper folds secured by rubber bands, a digital scale, a ski mask, two firearms, 293 rounds of ammunition, an article of mail addressed to the defendant, and a credit card issued to the defendant. The defendant thereafter was arrested and charged with the aforementioned offenses.

On January 17, 2018, the defendant filed a motion to suppress all evidence discovered during the December 12, 2017 search for lack of probable cause. Following a hearing, the court denied that motion. The defendant then entered a conditional plea of nolo contendere to all charges, thereby preserving his right of appeal.[1] On July 31, 2019, the defendant was sentenced to a total effective term of fourteen years of incarceration, execution suspended after eight years, with five years of probation. This appeal followed.

On appeal, the defendant contends that the court improperly denied his motion to suppress. His claim is twofold in nature. First, he urges us to reconsider the precedent of our Supreme Court in *State* v. *Barton*, 219 Conn. 529, 544, 594 A.2d 917 (1991), in which the court adopted a totality of the circumstances test for determining whether an affidavit sufficiently establishes probable cause for the issuance of a warrant. The defendant then asks us to depart from that precedent and conclude that the affidavit submitted in support of the search warrant in the present case did not provide the requisite probable cause. We address each claim in turn.

## I

### SUPREME COURT PRECEDENT

In this appeal, the defendant asks this court to revisit the precedent of our Supreme Court with respect to the legal standard applicable to probable cause determinations pursuant to article first, § 7, of the state constitution when a search warrant is requested by law

enforcement.[2] As our Supreme Court has explained, article first, § 7, "like the fourth amendment to the federal constitution that it closely resembles, safeguards the privacy, the personal security, and the property of the individual against unjustified intrusions by agents of the government." (Footnote omitted.) *State* v. *Barton*, supra, 219 Conn. 540.

In *State* v. *Kimbro*, 197 Conn. 219, 236, 496 A.2d 498 (1985), overruled in part by *State* v. *Barton*, 219 Conn. 529, 594 A.2d 917 (1991), a divided Supreme Court[3] concluded, as a matter of state constitutional law, that article first, § 7, required application of "the more specific standards of the *Aguilar-Spinelli* test";[4] see *Aguilar* v. *Texas*, 378 U.S. 108, 84 S. Ct. 1509, 12 L. Ed. 2d 723 (1964); *Spinelli* v. *United States*, 393 U.S. 410, 89 S. Ct. 584, 21 L. Ed. 2d 637 (1969); rather than "the amorphous [totality of the circumstances] standard" adopted by the United States Supreme Court in *Illinois* v. *Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). *State* v. *Kimbro*, supra, 236. In his dissenting opinion, Justice Callahan opined that "making *Aguilar* and *Spinelli* the test for determining probable cause under the state constitution is a step backward into that labyrinthine body of hypertechnical rules concerning the criminal law from which I thought we were gradually beginning to emerge." Id., 246 (*Callahan, J.*, dissenting).

The Supreme Court reconsidered that precedent six years later. In *State* v. *Barton*, supra, 219 Conn. 529, the court noted that "the case law applying the *Aguilar-Spinelli* test has come to be encrusted with an overlay of analytical rigidity that is inconsistent with the underlying proposition that it is the constitutional function of the magistrate issuing the warrant to exercise discretion in the determination of probable cause. That discretion must be controlled by constitutional principles and guided by the evidentiary standards developed in our prior cases, but it should not be so shackled by rigid analytical standards that it deprives the magistrate of the ability to draw reasonable inferences from the facts presented." Id., 534–35. The court further observed that "application of the standards mandated by *Kimbro* has resulted at times in unduly technical readings of warrant affidavits, and we reject such an inappropriate methodology." Id., 534.

The court also explained that a totality of the circumstances analysis is "more consistent with traditional assessments of probable cause. . . . [It] permits a judge issuing a warrant greater freedom to assess the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip. . . . [T]he task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the veracity and basis of knowledge of per-

sons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." (Citation omitted; internal quotation marks omitted.) Id., 537. The court thus concluded, "upon careful reconsideration, that the totality of the circumstances analysis adopted [by the United States Supreme Court in] *Gates* will continue to guarantee the people of Connecticut the full panoply of rights that they have come to expect as their due. . . . We accordingly depart from the more rigid analytical structure imposed in *Kimbro* in order to restore the proper constitutional authority of magistrates to weigh the sufficiency of the information presented to them in warrant affidavits and to balance the legitimate needs of law enforcement officers against the highly prized rights of privacy and personal security afforded by our constitution." (Citations omitted; internal quotation marks omitted.) Id., 546. The appellate courts of this state have adhered to that precedent in the thirty years since *Barton* was decided. See, e.g., *State* v. *Nowell*, 262 Conn. 686, 697, 817 A.2d 76 (2003); *State* v. *Velasco*, 248 Conn. 183, 189–90, 728 A.2d 493 (1999); *State* v. *DiMeco*, 128 Conn. App. 198, 204, 15 A.3d 1204, cert. denied, 301 Conn. 928, 22 A.3d 1275, cert. denied, 565 U.S. 1015, 132 S. Ct. 559, 181 L. Ed. 2d 398 (2011); *State* v. *Cabezudo*, 92 Conn. App. 303, 305, 884 A.2d 1033 (2005), cert. denied, 277 Conn. 901, 891 A.2d 3 (2006).

The defendant now asks this court to reconsider the wisdom of the Supreme Court's decision in *Barton*.[5] We refuse to do so. As an intermediate appellate tribunal, this court is not at liberty to modify, reconsider, or overrule the precedent of our Supreme Court. See *Hartford Steam Boiler Inspection & Ins. Co.* v. *Underwriters at Lloyd's & Cos. Collective*, 121 Conn. App. 31, 48–49, 994 A.2d 262, cert. denied, 297 Conn. 918, 996 A.2d 277 (2010). Whether to alter the applicable legal standard governing probable cause determinations when a search warrant is requested remains the prerogative of this state's highest court. See *Reville* v. *Reville*, 312 Conn. 428, 459 n.29, 93 A.3d 1076 (2014) ("once [the Connecticut Supreme Court] has finally determined an issue, for a lower court to reanalyze and revisit that issue is an improper and fruitless endeavor" (internal quotation marks omitted)); *State* v. *Fuller*, 56 Conn. App. 592, 609, 744 A.2d 931 ("[i]t is not within our function as an intermediate appellate court to overrule Supreme Court authority"), cert. denied, 252 Conn. 949, 748 A.2d 298, cert. denied, 531 U.S. 911, 121 S. Ct. 262, 148 L. Ed. 2d 190 (2000).

In his appellate reply brief, the defendant misconstrues that bedrock precept. The defendant argues that, although this court is bound by Supreme Court precedent, it "certainly may nonetheless conduct its own thoughtful review of *Kimbro* and its rationale, and of [*Barton*] and its results." He is mistaken. This court is not permitted to reconsider or reevaluate the precedent

of our Supreme Court. See, e.g., *State* v. *Brown*, 73 Conn. App. 751, 756, 809 A.2d 546 (2002) ("Our Supreme Court is the ultimate arbiter of the law in this state. We, as an intermediate appellate court, cannot reconsider the decisions of our highest court."); *State* v. *Rodriguez*, 63 Conn. App. 529, 532, 777 A.2d 704 ("we, as an intermediate appellate court, do not reevaluate Supreme Court decisions and are bound by those decisions"), cert. denied, 256 Conn. 936, 776 A.2d 1151 (2001).

Apart from that fundamental deficiency, the defendant has provided no federal or state precedent to support his contention that the totality of the circumstances test adopted by the United States Supreme Court in *Illinois* v. *Gates*, supra, 462 U.S. 213, and by our Supreme Court in *State* v. *Barton*, supra, 219 Conn. 529, should be overruled. Furthermore, although both *Kimbro* and *Barton* were predicated on the protections of article first, § 7, of the Connecticut constitution, the defendant has failed to provide this court with an independent state constitutional analysis in accordance with *State* v. *Geisler*, 222 Conn. 672, 684–86, 610 A.2d 1225 (1992), rendering any claim with respect to our state constitution abandoned. See *State* v. *Bennett*, 324 Conn. 744, 748 n.1, 155 A.3d 188 (2017). For all those reasons, we decline the defendant's invitation to revisit our Supreme Court's decision in *Barton*.

## II

### PROBABLE CAUSE

We next turn to the question of probable cause. The defendant claims that the court improperly denied his motion to suppress because the affidavit submitted in support of the search warrant did not establish probable cause. More specifically, he contends that the necessary nexus between the residence and the criminal activity alleged in the warrant application was lacking. We do not agree.

"The standards for upholding a search warrant are well established. We uphold the validity of [the] warrant . . . [if] the affidavit at issue presented a substantial factual basis for the magistrate's conclusion that probable cause existed." (Internal quotation marks omitted.) *State* v. *Batts*, 281 Conn. 682, 699–700, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007). "Probable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." (Internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 173, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001). "[I]t is axiomatic that [a] significantly

lower quant[um] of proof is required to establish probable cause [rather] than guilt. . . . [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our [citizens] . . . demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." (Citation omitted; internal quotation marks omitted.) *State* v. *Batts*, supra, 701.

Our determination of whether an affidavit sufficiently establishes probable cause is governed by the " 'totality of the circumstances' " test enunciated in *State* v. *Barton*, supra, 219 Conn. 544. That test requires the judge issuing the warrant "to make a practical, nontechnical decision whether there is a fair probability of finding contraband or evidence of a crime in a particular place. In coming to that decision, the [judge] must consider all the circumstances set forth in the affidavit, including the factual circumstances from which the 'veracity' and the 'basis of knowledge' of persons supplying hearsay information can be determined." Id., 552.

When the decision of a judge to issue a search and seizure warrant is challenged, the reviewing court "must determine [whether] the affidavit presented a substantial factual basis upon which the [judge] could conclude that probable cause existed. . . . Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." (Citations omitted; internal quotation marks omitted.) Id. "Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on the issue, therefore, is subject to plenary review on appeal." (Citation omitted; internal quotation marks omitted.) *State* v. *Batts*, supra, 281 Conn. 701. In conducting that review, "[w]e consider the four corners of the affidavit and, giving proper deference to the issuing [judge], determine whether the issuing [judge] reasonably could have concluded that probable cause existed." *State* v. *Rodriguez*, 163 Conn. App. 262, 266, 135 A.3d 740, cert. denied, 320 Conn. 934, 134 A.3d 622, cert. denied,      U.S.     , 137 S. Ct. 167, 196 L. Ed. 2d 140 (2016).

The warrant affidavit in the present case was executed by two detectives with the Stratford Police Department, who, at that time, were assigned to its

narcotics, vice and intelligence unit. In that affidavit, the detectives averred that they had spoken with a confidential informant (informant) in October, 2017, who indicated that an individual known as "George" had been "supplying amounts of heroin within the town of Stratford for approximately [one] year." The informant described George as "a black male with dreads who is in his late twenties" who was selling "heroin to street level and mid-level narcotics dealers." The informant also provided George's telephone number, which the informant used to call or text him. In addition, the informant stated that George "lives in the area of Success Avenue and operates a silver Nissan Maxima with Maine plates."

The detectives explained that they subsequently identified the defendant as the person described as George by the informant through a check of various law enforcement databases. They recited the defendant's criminal record and stated that the defendant currently was on probation for an incident that transpired in 2011, for which he was charged with robbery in the first degree with a deadly weapon and reckless endangerment. The detectives also stated that the residence was listed as the defendant's address on file with the Office of Adult Probation, and his phone number matched the one provided by the informant.

The detectives stated that they then conducted surveillance at the residence and observed a male who matched both (1) the description provided by the informant and (2) probation and booking photographs of the defendant. They also observed that male enter a silver Nissan Maxima with Maine license plates parked in the driveway of the residence. The informant thereafter was shown "a colored unmarked photo" of the defendant; the informant "immediately stated that the individual in the photograph was the person that he/she knows as 'George.'"

The affidavit then described two controlled purchases of heroin that were conducted "[d]uring the week ending [November 26, 2017]," and the "week ending [December 3, 2017]," respectively. On both occasions, the surveillance was conducted at the residence, where the defendant was observed operating the Nissan Maxima with a Maine license plate and then entering the residence. Each time, the informant contacted "George" by calling the defendant's phone number and arranged to meet at a specific location in Stratford to purchase heroin from him. The informant then met with "George" to complete the narcotics transaction while under surveillance by law enforcement. When the transaction concluded, the informant "confirmed that the black male that sold him/her the heroin was the male that he/she knows as 'George' and was the person he/she [previously] identified in the photograph" provided by law enforcement. Furthermore, after both controlled

purchases concluded, the detectives averred that "[s]urveillance showed that [the defendant] and the Nissan Maxima bearing [Maine license plates] were both at the residence immediately after the buy occurred."

The affidavit also indicated that "[s]urveillance shows that [the defendant] continues to reside at [the residence]" and that the defendant "has been seen at the aforementioned residence during various day, evening and night hours." The detectives further stated that, "based on training and experience, the affiants know that individuals who traffic illegal drugs will store their drugs in their homes, basements, garages, vehicles and other residences to avoid law enforcement detection. . . . They will use various weapons, including but not limited to firearms for protection. They will maintain a supply of bullets for those firearms. . . . These drug traffickers commonly retain these photographs and/or video. They utilize various materials including, but not limited to paper, plastic and glassine bags to package their illegal drugs for street sale. Various types of measuring devices are utilized by drug traffickers to measure the amount of illegal drugs that they are selling." The affidavit concluded by stating that, "based on the aforementioned facts and circumstances, the affiants have probable cause to believe that evidence of possession of heroin with intent to sell [in violation of General Statutes §] 21a-278 (b), is located within [the residence]."

On appeal, the defendant claims that the nexus between the residence and the criminal activity alleged in the warrant application is lacking. We disagree. As our Supreme Court has explained, the ultimate question "is whether there was a fair probability that the contraband was within the place to be searched." *State* v. *Smith*, 257 Conn. 216, 223, 777 A.2d 182 (2001). The affidavit in the present case contains a detailed description of an alleged heroin dealer that matched the defendant's physical attributes, that shared the defendant's home address and telephone number, and who—like the defendant—drove a silver Nissan Maxima with Maine license plates. The affidavit also indicates that when the informant was shown a photograph of the alleged heroin dealer, the informant positively identified the defendant "immediately." Law enforcement observed the defendant at the residence, where a silver Nissan Maxima with Maine license plates was parked in the driveway. Surveillance conducted at the residence also confirmed that the defendant and that vehicle were at the residence "[p]rior" to the two controlled purchases and "immediately after the buy occurred."

On that basis, the issuing judge reasonably could have concluded that probable cause to search the residence existed. As our decisional law demonstrates, narcotics dealers commonly store evidence of that illegal activity in their homes. See, e.g., *State* v. *Couture*, 194 Conn. 530,

544, 482 A.2d 300 (1984) ("at the time of the issuance of the warrant it was reasonable for the [issuing judge] to infer that the defendant's residence was the logical place to conceal not only the fruits but also the instrumentalities of the crime"), cert. denied, 469 U.S. 1192, 105 S. Ct. 967, 83 L. Ed. 2d 971 (1985); *State* v. *Castano*, 25 Conn. App. 99, 104, 592 A.2d 977 (1991) ("[i]n the case of drug dealers, evidence is likely to be found where the dealers live" (internal quotation marks omitted)); *State* v. *Vallas*, 16 Conn. App. 245, 262, 547 A.2d 903 (1988) (noting that "it is reasonable to conclude that the participants [in the drug trade] will maintain . . . supplies in their homes" and that "[w]hen a suspect has been carrying on an illegal activity for an extended period of time without detection, it is reasonable to conclude that evidence of his activity will be secreted in his home"), aff'd sub nom. *State* v. *Calash*, 212 Conn. 485, 563 A.2d 660 (1989).

Although the defendant relies on *State* v. *DeChamplain*, 179 Conn. 522, 427 A.2d 1338 (1980), for the proposition that a likely nexus between his residence and criminal activity did not exist, that case is readily distinguishable. Unlike the present case, in which the residence is described in the warrant application as a "[two-story, single-family] residence," *DeChamplain* involved an apartment building. More importantly, the court in *DeChamplain* "found a lack of probable cause to believe that drugs were located in [that] apartment, because the only [fact] establishing a nexus to the apartment was a *single telephone call* to the defendant at his apartment in which he received an order for the purchase of drugs." (Emphasis added.) *State* v. *Brown*, 14 Conn. App. 605, 619, 543 A.2d 750, cert. denied, 208 Conn. 816, 546 A.2d 283 (1988). By contrast, the affiants here observed multiple controlled narcotics transactions involving the defendant, and each time the defendant and his silver Nissan Maxima with Maine license plates were observed at the residence prior to the transactions and immediately thereafter.

In ruling on the defendant's motion to suppress, the court acknowledged that, in describing the first controlled purchase, the affidavit does not identify the time period with any specificity other than stating that the defendant was observed at the residence "prior to the buy taking place . . . ." (Internal quotation marks omitted.) As our precedent instructs, the task of the judge in issuing a search warrant "is simply to make a practical, commonsense decision" based on the totality of the circumstances presented in the warrant affidavit. *State* v. *Barton*, supra, 219 Conn. 537. Applying that precept, the court concluded that "[t]he logical and reasonable inference that could have been drawn by the issuing court is that the language [in question] . . . helped explain when the surveillance may have been conducted. The practical and nontechnical translation of 'prior to the buy taking place' in terms of time, for

purposes of probable cause analysis, could have been found to be a period of time in very close approximation to the arrangements made for the first controlled buy." We concur with that assessment. We further note that, with respect to the second controlled purchase, the affiants stated that "[s]urveillance showed that just prior to the buy taking place [the defendant] arrived at [the residence]," from which it may be inferred that narcotics were stored at the residence.

"Probable cause does not depend upon the incantation of certain magic words." *State* v. *Barton*, supra, 219 Conn. 549. Moreover, we are mindful of our obligation to "evaluate the information contained in the affidavit in the light most favorable to upholding the issuing judge's probable cause finding." *State* v. *Shields*, 308 Conn. 678, 691, 69 A.3d 293 (2013), cert. denied, 571 U.S. 1176, 134 S. Ct. 1040, 188 L. Ed. 2d 123 (2014). Having carefully examined the record before us, we conclude that the warrant application contained sufficient information from which the judge reasonably could infer that there was a fair probability that contraband or evidence of a crime would be found in the defendant's residence. For that reason, the court properly denied the defendant's motion to suppress.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] General Statutes § 54-94a provides in relevant part: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. . . ."

The trial court in this case made such a determination at the defendant's May 16, 2019 plea hearing.

[2] Article first, § 7, of the Connecticut constitution provides: "The people shall be secure in their persons, houses, papers and possessions from unreasonable searches or seizures; and no warrant to search any place, or to seize any person or things, shall issue without describing them as nearly as may be, nor without probable cause supported by oath or affirmation."

[3] Justices Dannehy and Santaniello joined Justice Healey's majority opinion. Justices Shea and Callahan issued dissenting opinions.

[4] "The *Aguilar-Spinelli* test provides a method for evaluating the existence of probable cause . . . when a search warrant affidavit is based upon information supplied to the police by a confidential informant. . . . Under the *Aguilar-Spinelli* test, [t]he issuing judge must be informed of (1) some of the underlying circumstances relied on by the informant in concluding that the facts are as he claims they are, and (2) some of the underlying circumstances from which the officer seeking the warrant concluded (a) that the informant, whose identity need not be disclosed, was credible, or (b) that the information was reliable. . . . When the information supplied by the informant fails to satisfy the *Aguilar-Spinelli* test, probable cause may still be found if the warrant application affidavit sets forth other circumstances— typically independent police corroboration of certain details provided by the informant—that bolster the deficiencies." (Citation omitted; internal quotation marks omitted.) *State* v. *Respass*, 256 Conn. 164, 174 n.12, 770 A.2d 471, cert. denied, 534 U.S. 1002, 122 S. Ct. 478, 151 L. Ed. 2d 392 (2001).

[5] In his principal appellate brief, the defendant insists that "our Supreme Court's rejection of *Kimbro* should be revisited"; that "*Kimbro* should be revived"; that "[t]he "loosening of the *Aguilar-Spinelli* test was unneces-

sary"; and that, "[i]t is, therefore, now, more than ever, time to revisit" *Barton* . . . ."

———————————————————